Timothy **FOLEY**, et al.,
**Plaintiffs-Appellants,**

v.

**CONSOLIDATED CITY OF INDIANAP-
OLIS, et al., Defendants-Appellees.**

No. 2–378A97.

Court of Appeals of Indiana,
Fourth District.

June 24, 1981.

Rehearing Denied July 22, 1981.

Stephen P. Zinkan, Zinkan, O'Hara & Campbell, Indianapolis, for plaintiffs-appellants.

Michael W. Owen, Ronald R. Snyder, Roberts, Ryder, Rogers & Neighbours, Indianapolis, for defendants-appellees.

MILLER, Judge.

This is an appeal from summary judgment granted in favor of the City of Indianapolis (City) in an action brought under the Declaratory Judgment Act, Ind.Code 34–4–10–1 et seq., by certain members of the Indianapolis Police Department (IPD) claiming entitlement to increases in pay under a city-initiated college incentive pay

program (CIP) and charging the City with failure to appropriate sufficient funds to maintain the program. Although the City did not dispute the existence of CIP benefits they claimed the right to alter those benefits from year to year. The police officers alleged substantial detrimental reliance on representations that the original form of the agreement would continue for the length of employment of each officer enrolled in the program. After cross motions for summary judgment, the trial court found there were no such representations, oral or written, express or implied, and held the City was free to establish, revise or revoke the program with regard to future services, pursuant to their statutory right to fix and determine wages and benefits. We affirm.

## FACTS

The facts are essentially undisputed and are derived solely from the pleadings and affidavits. In 1971, the City implemented a college incentive pay program increasing a police officer's base pay by two and one-half percent (2½%) for each 30 hours of successfully completed college credits up to a maximum of ten percent (10%) of the officer's base pay. The program was publicized in recruiting pamphlets and bulletins circulated throughout the police department. Appended as exhibits to the officer's complaint and motion for summary judgment were 1) affidavits executed by each officer uniformly stating he or she "expected" CIP to continue indefinitely in its original form, and 2) police department bulletins and recruiting pamphlets containing the alleged representations on which the officers apparently based their expectation for indefinite continuation of CIP benefits.

The department bulletins recite "a supplemental salary increase of 2½% awarded for successful completion of each 30 credit hours of college level courses up to a maximum of 10%."[1] The recruitment pamph-

---

1. The record contains two such "general orders" dated 1974 and 1976 respectively. The 1974 bulletin contains the clause quoted above and is preceded by the following statement: "the following administrative policy for the college program will become effective the fall semester of 1974 and thereafter." This general

lets for each year CIP was effective contain the pay schedules for the current year according to rank or years of service for 1) salary for officers without a college degree and longevity pay, 2) salary for officers with a degree (indicating the maximum under CIP), and 3) pension benefits. The separate CIP schedule contains three vertical columns listing rank, salary (base) and incentive (maximum CIP) respectively, presenting the dollar figures in the last two columns. This schedule contains the following additional information: "add $600.00 clothing allowance plus longevity pay for number of years service to figure total yearly salary." The salary, longevity and pension schedules are similarly constructed. Therefore, as far as we can determine, it is uncontested the bulletins treat CIP in the same manner as base pay and longevity— each schedule simply presenting an additional factor for computation of total salary for the given year. The police officers do not allege the existence of any other representations, but agree the court was presented with all representations on which the officers rely. The content of the budget ordinance encompassing CIP, submitted as an exhibit to the City's motion for summary judgment, is also not disputed.

The current dispute centers on an action taken by the Police Special Service District Council approving the budget and appropriating funds for the 1977 fiscal year.[2] Allocations for CIP were decreased to $200 for each 30 hours of college credit up to a maximum of $800, while allocations for the base salary of all police officers were increased by $600. Allocations were also increased for insurance contributions by the City for all members. If the CIP formula had remained unaltered it would have required budgeting an additional $65,000 for 1977. Under the 1977 compensation scheme, the police officers involved in this suit realized an average increase in salary

of $317 per year, while two police officers realized a decrease in salary of $59.60 per year.

In October 1976, after adoption of the 1977 ordinance,[3] approximately 173 officers, who were then receiving benefits under CIP, filed a complaint for continuation of the original CIP terms. As noted earlier, following cross motions for summary judgment the trial court issued findings of fact, as requested, concluding there was no evidence that representations were made that CIP would never be revised, modified or altered, nor restricting the statutory right to revise or eliminate CIP. Summary judgment was granted for the City.

## ISSUE

The sole issue presented for review is whether the City had the right to yearly revise the CIP plan of compensation for the IPD.

## DECISION AND DISCUSSION

We first note summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Rules of Procedure, Trial Rule 56(C). The officers claim the uncontradicted evidence before the court, which left no genuine material issue of fact, entitled them, not the City, to summary judgment as a matter of law. In their brief, they argue the existence of an irrevocable offer which the officers accepted and relied upon. They further contend the binding terms of the offer included the continuation of CIP at the initial 10% maximum rate, and deny the City's statutory power to alter this rate in later years.

Utilizing various elementary principles of contract law to support their contention that "the promise of college incentive pay became irrevocable when the [police] relied

order was "superseded" by the 1976 bulletin which did not contain a similar preface.

**2.** The 1977 base pay ranged from $13,436 for first year patrolmen to $23,768 for chief of police.

**3.** The ordinance in question was adopted by the Police Special Service District under the Department of Public Safety by 18–4–6–1 whose powers are defined in 18–4–12–1 *et seq.*

upon it to their detriment," the police attempt to demonstrate detrimental reliance by affidavits attesting both to the officers' continuation or acceptance of employment with the IPD as opposed to accepting employment with other law enforcement agencies and to their enrollment in college programs subjecting themselves to the attendant financial and personal strains. After arguing the irrevocable nature of the offer, they then focus on the terms of the contract and admit: "The one term that is not expressly stated is the length of time that the [police] would receive their college incentive pay" and attempt to supply the missing term by reference to the police officers' affidavits which uniformly state: "The affiant *expected* that the method of computing college incentive pay as a percentage of his base salary, would not change during the time of [his or her] employment with the Indianapolis Police Department." In their brief, they conclude: "The fact that the [City] never stated that the college incentive pay would only be paid for a given period of years gave rise to the reasonable inference that it would be continuously paid during each employee's length of service. . . ." These expectations were apparently based solely on representations, or lack thereof, regarding the terms of CIP as derived from the recruiting pamphlets and departmental bulletins published and circulated by the IPD.

As mentioned, earlier, the pamphlets presented CIP in the same manner as base salary, longevity pay and pension benefits, i. e. by listing the dollar amounts for which an officer might be eligible *during the year* of the pamphlets' publication. Similar to the longevity and rank factors, CIP was presented as a possible component of an officer's yearly salary. It therefore appears the same arguments for indefinite continuation of the 1976 rate of CIP could also be made for indefinite continuation of the rate of base salary and longevity benefits as presented in the same pamphlet. Significantly, the officers do not distinguish these factors but appear to acknowledge the City's power to change the rate of compensation for these latter elements, while incongruously asserting their right to CIP at the 1971–1976 rate. We therefore find it difficult to accept the officers' contention that they reasonably expected CIP to continue for each officer's full length of service.

■ We do agree that the police are employees rather than officers and that their relationship with the City is purely contractual. *State ex rel. Palm v. City of Brazil,* (1947) 225 Ind. 308, 73 N.E.2d 485, 74 N.E.2d 917; *State ex rel. Crooke v. Lugar,* (1976) 171 Ind.App. 60, 354 N.E.2d 755. Since a municipal corporation is a creature of the state, however, every party dealing with a municipality is bound to take notice of the limitations on its powers and the laws governing the municipality in making contracts. Thus, in *City of Frankfort v. Logan,* (1976) 168 Ind.App. 81, 341 N.E.2d 510, this Court held void a contract to hire a 42 year old individual as a regular policeman, since a statute prohibited appointment of regular police over 35 years of age. *Accord, Hamer v. City of Huntington,* (1939) 215 Ind. 594, 21 N.E.2d 407 (company was bound by statutory limitation on city's power to make a valid contract without prior appropriation). Furthermore, the terms and conditions of the contract include all relevant statutory provisions as if such provisions were specifically set out in the contract. *Marter v. City of Vincennes,* (1948) 118 Ind.App. 586, 82 N.E.2d 410. Thus, in *Kirmse v. City of Gary,* (1944) 114 Ind.App. 558, 51 N.E.2d 883, the Court held that a contract of employment with a police officer included the statute providing for minimum compensation. We must therefore proceed to examine the relevant statutory provisions.

■ The compensation of municipal police forces is a legislative power delegated to the local governments by the Indiana General Assembly. *See e. g.* Ind.Code 18–1–11–1 *et seq.* Several provisions of the Uni-Gov. Act (Ind.Code 18–4 *et seq.*) regulate the compensation for police officers in first-class consolidated cities. Ind.Code 18–4–12–21 establishes the minimum annual

compensation for members of the police force and provides:

"[T]he chief, with the approval of the director, shall establish a scale of compensation for the various grades of officers in the force. The compensation so fixed shall be based on the rank held by the officer of the force as shall be determined under the merit system of this article, the length of service of the officer in each rank, and the special technical competence of job assignment of the officer. The scale of compensation shall be required to apply uniformly to all officers similarly situated with respect to rank, length of service in rank, and special technical competence and job assignment." [4]

Moreover, Ind.Code 18–4–5–7, which generally governs compensation in consolidated first-class cities, provides:

"Compensation of all employees shall be set pursuant to ordinance or resolution of the city-county council *or in the case of a special service district by its council,* which may be by salary schedules. No compensation limits shall be imposed except those set by such ordinances or resolutions. The city-county council shall also determine by ordinance the compensation of the mayor and the city-county council. The compensation of the mayor or any member of such council shall not be changed during the term of such officeholder, but shall apply to the persons serving as mayor or council members at the next succeeding term thereof, except that the salaries of the members of the council may be changed so that they equal the compensation of the members of the common council of the first-class city." (Emphasis added.)

Significantly, the above statute does not expressly prohibit a change in the compensation of employees during their term of employment.[5]

---

4. There is also specific statutory authority for Indianapolis and its departments to establish a system of compensation, such as CIP, based on considerations other than rank and longevity. Ind.Code 18–4–2–28 grants a consolidated first-class city the

"power to establish with respect to any class of employees a system of employment, promotion, demotion, transfer, dismissal or compensation and qualification, to provide for security in employment with respect to all or certain classes of the employees of any department or division and to effect modern developments in the solution of personnel problems, including but not limited to establishment of positions for classification and recruiting in pay, . . . ."

5. In their brief, the officers specifically state they do not question the applicability of IC 18–4–2–28 and IC 18–4–5–7, but argue the governing statutory provision in the instant case is Ind.Code 18–4–2–10 which gives consolidated first-class cities the "[p]ower to enter into contracts with other governmental entities and with private persons, firms or corporations, providing for the furnishing of or the acquisition and securing of services and material of all kinds, necessary or desirable in the public interest." They therefore argue this provision gave the City the power to make a "supplementary" contract in the instant case not governed by the other statutes on compensation of police officers and other employees.

Under the familiar plain meaning rule of statutory construction, the latter statute clearly provides for the formation of such contracts only with private parties as independent contractors and is not applicable to contracts with city employees. It is therefore a general statute which allows the city to contract for services not specifically authorized by special statutes. In the instant case, however, this general statute must give way to IC 18–4–5–7 and other statutes specifically governing the compensation of police officers as city employees, since a specific statute controls over a general statute on the same subject matter. *State ex rel. Eastern Pulaski Community School Corp. v. Pulaski Circuit Court,* (1975) 264 Ind. 37, 338 N.E.2d 634; *State ex rel. Schuerman v. Ripley County Council,* (1979) Ind.App., 395 N.E.2d 867. Under the authorities cited, we view IC 18–4–2–10 as according consolidated first-class cities the general power to contract for services, and IC 18–4–5–7 as more specifically governing the compensation of employees whose services are contracted for under the former provision.

Furthermore, those cases which the police officers cite to support their argument for enforcement of a "supplementary" contract are not applicable to the case at bar but uniformly requires a private employer to honor promises of a bonus *for the period promised.* None of the cases address the question, now presented to this Court, of an extension of the bonus beyond the period promised. For example, in a case cited by the officers, *Orton & Steinbrenner Co. v. Miltonberger,* (1920) 74 Ind.App. 462, 129 N.E. 47, the Court enforced a profit-sharing

■ Here, the Police Special Service District Council adopted a budget ordinance under the provisions of IC 18–4–12–11, which specifically authorizes them to approve or modify the budget proposed by the Director of the Department of Public Safety and requires them to appropriate monies for the budget as approved. We note the language of this ordinance, enacted pursuant to the appropriate statutes, was uniform for the years 1971 through and including the year in question, 1977, except for dates and amounts, and read as follows:

"POLICE FORCE BUDGET FOR 197X

AN ORDINANCE creating the *annual* budget for the Police Special Service District of the City of Indianapolis, Indiana, *for the fiscal year beginning and ending December 31, 197X*, appropriating monies for the purpose of defraying the expenses and all outstanding claims and obligations of said Police District and the Police Pension Fund and fixing and establishing the annual rate of taxation and tax levy for the year 197X, for each fund for which a special tax levy is authorized and fixing a time when this ordinance shall take effect.

BE IT ORDAINED BY THE POLICE SPECIAL SERVICE DISTRICT COUNCIL OF THE CITY OF INDIANAPOLIS

Section 1. For the expenses of the Police Force of the City of Indianapolis *for the fiscal year beginning January 1, 197X, and ending December 31, 197X*, the sums of money herein set out are hereby appropriated and ordered set apart out of the "Police Service District Fund" for the purposes herein specified, subject to the law governing the same:

[herein were listed the lump sums appropriated for personal and contractual

bonus in addition to the basic contract of employment *for the year stated in the notice* announcing the profit-sharing plan. There was no contention that such plan should be held to apply for subsequent years, and we cannot imply such a holding. Again, in the instant

services in addition to other obligations]

.     .     .     .     .

Section 3. The salaries, wages and compensations of the various officers and employees of the Police District for the ensuing year are now approved by the Police Special Service District are hereby adopted *and fixed* and the respective amounts herein specified for personal services are hereby appropriated therefor; *provided, however, that no person, official or employee whose salary or compensation has been approved as part of the Personal Services portion of this ordinance, or by any ordinance hereafter adopted, shall have any vested right to receive such amount, or any minimum amount, except as may be accrued, or otherwise provided by statute.* Control as to any decrease shall be vested in the body or executive having direction over the one affected, as provided by law." (Emphasis added.)

The police officers were clearly on notice that their rate of compensation was approved on a *yearly* basis, and this rate of compensation, including CIP, was annually subject to revision.

This power to change the rate of compensation comports with settled law in other jurisdictions. For example, in his treatise on Municipal Corporations, McQuillin summarizes the principle as follows:

"*The power to fix the compensation of municipal officers and employees has been deemed* to include the power to adjust or regulate, and *to imply the plenary right to act by lowering or raising salaries.* In many jurisdictions, it has been said that unless forbidden or restrained by law *the salary or compensation of an officer or employee of a municipal corporation may be changed from time to time, or increased or diminished during the continuance of the term or period of em-

case we are not requested by the police officers to enforce CIP for the term of each ordinance, (since CIP was paid during the years for which it was approved,) ·but, rather, to extend the former rate of CIP compensation beyond those years.

*ployment.* The right to change may be prescribed by law, and provision may be made for annual salary increments. *The amount of compensation is usually governed by the law in force at the time the services are rendered, not at the time of selection of the officer."* (Emphasis added.) (Footnotes omitted.)

E. McQuillin, Municipal Corporations § 12.-196 (1979); *accord,* 62 C.J.S. *Municipal Corporations* § 725 (1949) (the power to fix compensation generally includes the right to reduce such amount); 62 C.J.S. Municipal Corporations § 586 (1949) (the salary of police officers may be changed in the absence of a provision to the contrary.)

This general power to change the rate of compensation of police officers has been applied to compensation apart from an officer's base salary. In *Chicago Patrolmen's Association v. City of Chicago,* (1974) 56 Ill.2d 503, 309 N.E.2d 3, police officers brought a class action to compel the city to pay "step" and "longevity" increases provided for under former appropriation ordinances but not involved in the current ordinance. Although that case also involved a statute which required an appropriation as a prerequisite to a valid contract, the Court also addressed the officers' contention, similar to the one in the case at bar, that they had relied on previous representations the increases would be paid for the current year, and that such reliance effected a "super-contract" which the city should be equitably estopped from denying. The Court concluded the reliance was unjustified since the Superintendent who had made the representations did not fix the police officers' salaries and since the appropriation ordi-

nance then under consideration gave notice there would be no increases paid.

We find the Illinois Court's view of the officers' reliance to be persuasive. In the instant case, the officers admit to a total absence of any express representations that CIP would continue for the full term of their employment, urging us to imply such a representation from notices circulated by the IPD, an entity without any authority to fix the officers' salaries. Under IC 18–4–5–7 the power to fix the rate of compensation for police officers as with other employees of the Department of Public Safety, ultimately rested with the Council.[6] Thus, the IPD lacked any authority to make representations regarding the rate of compensation for police officers with college credits. *See Fort Wayne Patrolman's Benevolent Assoc. v. City of Fort Wayne,* (1980) Ind.App., 408 N.E.2d 1295, 411 N.E.2d 630 (mayor had no authority to bind the city to an agreement fixing the salaries of police.) Moreover, the language of the ordinances limiting their effectiveness to the ensuing year and the 1977 ordinance's failure to provide the former amount for CIP gave the officers notice that CIP could be periodically revised or revoked. Given the lack of authority for the IPD to bind the City to an irrevocable contract for an indefinite period of time for CIP and given the clarity of the ordinances involved, the officers were unjustified in expecting the unaltered continuation of CIP benefits.

An analogous result was reached in *Middleton Motors, Inc. v. Indiana Department of State Revenue,* (1978) Ind., 380 N.E.2d 79 where a taxpayer sought to equitably estop the state from asserting a three month limi-

---

**6.** The Director of the Department and the police chief are authorized to adopt a schedule of compensation for police officers under IC 18–4–12–21 but IC 18–4–12–11 subjects the proposed budget to approval or modification of the Police Special Service District Council.

In Indiana it is well established that a City can not reduce the compensation of police or firefighters by failing to appropriate sufficient funds. The Council is under a mandatory duty to appropriate annually sufficient funds to pay salaries as fixed by ordinance. *City of Gary v. State ex rel. Paris,* (1980) Ind.App., 406 N.E.2d

1247; *City of Lafayette v. Keen,* (1943) 113 Ind.App. 552, 48 N.E.2d 63. Thus an appropriation ordinance, rather than a salary ordinance, cannot alone increase or decrease salaries. *Dabagia v. Michigan City,* (1951) 121 Ind.App. 542, 98 N.E.2d 923. We are not confronted with such a situation in the instant case, since the officers do not contend the ordinances under consideration were only appropriation ordinances, and it appears the ordinances in question in fact fixed the salary of police officers based on the decreased CIP rate, and provided as well for the necessary appropriations.

tation period to file for a refund because the deputy director of the revenue department had erroneously represented the limitation period as running for two years. Our Supreme Court rejected the proposed application of the doctrine, charging the taxpayer with knowledge of the statute of limitations which could not be circumvented by the deputy director's unauthorized statements. *Accord, City of Evansville v. Follis,* (1974) 161 Ind.App. 396, 315 N.E.2d 724.

In contrast, the doctrine of equitable estoppel has been upheld in a few narrow instances. For example, in *State ex rel. Agan v. Hendrick Superior Court,* (1968) 250 Ind. 675, 235 N.E.2d 485, both parties to a condemnation proceeding failed to object to non-compliance with a statute requiring the filing of an appraiser's report within ten days. On appeal the Supreme Court held the State was estopped from arguing non-compliance with the statute, holding the doctrine applicable where the State had assumed inconsistent positions at trial and on appeal. *Citing State ex rel. Agan* for support, Justice DeBruler dissented in *Middleton Motors, Inc. v. Indiana Department of State Revenue, supra,* partially noting that the deputy director in the latter case made representations within *his official authority.*

Lastly, equitable estoppel has been recognized where the party relied upon representations made regarding an ambiguous statute. In *Cablevision of Chicago v. Colby Cable Corp.,* (1981) Ind.App., 417 N.E.2d 348, the validity of a cablevision franchise ordinance was questioned because of an ambiguity in the statutory procedures necessary to enact such an ordinance. This Court held the city and third parties were estopped to deny the ordinance's validity based on the city attorney's representations that the ordinance was valid. Since the procedures to enact the ordinance in that instance were not clear, we held the parties may have been justified in relying on the city attorney's representations.

Neither of the considerations in *State ex rel. Agan v. Hendrick Superior Court, supra* or *Cablevision of Chicago v. Colby Cable*

*Corp., supra* are present here. We are not confronted with inconsistent positions adopted by an entity authorized to make the representations allegedly relied upon, nor are we confronted with an ambiguous statute. The officers cannot justify their reliance on unauthorized representations where the governing statutes and the ordinances passed pursuant to such statutes clearly provided for yearly alteration of their rate of compensation by the Council.

Finally, the police officers further maintain they had a vested right to CIP for services rendered in acquiring college credits as distinct from services rendered as police officers, thereby arguing their compensation had "accrued" and their right to CIP was "vested" within the meaning of the ordinance's proviso which states:

> "provided, however, that *no ... employee whose salary or compensation has been approved as part of the Personal Services portion of this ordinance, or by any ordinance hereafter adopted, shall have any vested right to receive such amount, or any minimum amount, except as may be accrued...."* (Emphasis added.)

Thus, the officers urge us to apply to their situation the rule which limits the right of a municipality to revise or revoke an ordinance if such action would affect a vested right. The rule in this regard is stated:

> "[A] municipality which has been given the power to enact ordinances, as a necessary incident thereto and without any express authorization in the statute, [has] the power to modify or repeal such ordinances unless the power so to do is restricted in the law conferring it. The power is subject to the limitation that *the repeal or change cannot be made so as to affect any vested rights lawfully acquired under the ordinance sought to be modified or repealed."* (Emphasis added.)

*Vesenmeir v. City of Aurora,* (1953) 232 Ind. 628, 632, 115 N.E.2d 734, 737 (ordinance redefining corporate boundary could be modified or repealed); *accord, Dagley v. Incorporated Town of Fairview Park,* (1978) Ind.App., 371 N.E.2d 1338.

In order for a right to vest or a liability to be incurred it must be "immediate, absolute, complete, unconditional, perfect within itself and not dependent upon a contingency." *E. g., Martin v. Simplimatic Engineering Corp.*, (1979) Ind.App., 390 N.E.2d 235, 237, *quoting Parr v. Paynter*, (1922) 78 Ind.App. 639, 643, 137 N.E. 70, 71. Moreover, it is well settled "a mere expectance of a future benefit, or a contingent interest in property founded on anticipated continuance of existing laws, does not constitute a vested right." 16 C.J.S. *Constitutional Law* § 215 at 1174–75 (1956) (Footnotes omitted.); *accord, e. g., Parr v. Paynter, supra.* The officers fail to recognize they had no contract for payment due upon completion of the requisite college credits, but only upon completion of college credits *in conjunction with* the rendering of services as Indianapolis police officers. Their right to CIP was "vested" and payment "accrued" only after these latter services were rendered.[7]

We conclude summary judgment was properly granted in this case and the judgment of the trial court is affirmed.

YOUNG, P. J., and CHIPMAN, J., concur.

---

7. Under the facts of this case we need not here decide whether the City could revise an approved scheme of compensation during each year covered by each ordinance.