James W. MORRISON,
Plaintiff-Appellant,

v.

Mary Jane McMAHON, Mayor City of Frankfort, and the Frankfort Utility Service Board, Howard Kipp, President, Defendant-Appellees.

No. 1–984A215.

Court of Appeals of Indiana,
First District.

March 28, 1985.

Rehearing Denied May 2, 1985.

Richard D. Schreiber, Gray, Robinson, Eckert, Ryan & Schreiber, Indianapolis, for plaintiff-appellant.

Frederic C. Sipe, Baker, Orbison, Bales & Knowles, Indianapolis, Gene E. Robbins, Morrison, Robbins & Shaffer, Frankfort, Paul D. Edmiston, Power, Little & Edmiston, Frankfort, for defendant-appellees.

NEAL, Judge.

### STATEMENT OF THE CASE

James W. Morrison (Morrison) appeals the Montgomery Circuit Court's grant of appellees' Motion for Summary Judgment. Morrison filed a complaint alleging a breach of his employment contract against Mary Jane McMahon, Mayor, City of Frankfort (Mayor) and the Frankfort Utility Service Board (Board).

We reverse.

### STATEMENT OF THE FACTS

Prior to January 1, 1983, utilities and transportation were regulated by the Public Service Commission Act of 1913. Among the Act's numerous provisions, IND.CODE 8–1–2–100 permitted municipalities, like Frankfort, to operate municipally-owned utilities through the Utility Service

Board. IND.CODE 8–1–2–100 provides for the selection by the Board of a manager who shall have executive charge of the utility.

Frankfort's Utility Service Board governed the Frankfort Sewage Works. Frankfort had an old sewage treatment plant that was built in 1929; a new plant was being constructed in 1977.

Prior to 1977, Morrison was the Superintendent of the Lafayette Sewage Treatment Facility in Lafayette, Indiana. Subsequent to his service as Superintendent, Morrison worked in the engineering department. In the winter of 1976, he was contacted to interview for the Superintendent's position in Frankfort. After interviewing with the Board, Morrison entered into an oral contract whereby he agreed to become the new superintendent of the City's sewage treatment plant. He moved to Frankfort and commenced employment in February 1977.

Morrison served in the capacity of Superintendent of the Frankfort Sewage Works until March 11, 1982, when he was terminated. Dr. Kipp, president of Board, met with Morrison on the afternoon of the 11th; he informed him that he could "either resign now or you will be fired". The decision to fire Morrison had been made one week earlier at an executive session. Morrison was not notified of the session and did not attend it. Prior to his termination, Morrison had never had a discussion with anyone concerning his job performance and, in fact, when he was fired, he was not given a specific reason for his discharge.

Morrison filed a complaint in Clinton Circuit Court on April 14, 1983, alleging that the Mayor and the Board illegally removed him from his position in contravention of statutory law; namely, IND.CODE 8–1–2–100, which states in part that "the manager [of the utility] may be removed by the Board for cause, at any time, after notice and a hearing". Appellees filed, among other things, a motion to dismiss. After a change of venue to Montgomery Circuit Court, appellees filed a motion for summary judgment, alleging, *inter alia*, that Morrison's contract was terminable at will and that Morrison had failed to comply with the requirements of IND.CODE 34–4–17.5–1 *et seq*, which governs appeals from municipal actions. The trial court granted the summary judgment motion, finding that while Morrison's contract was protected by statute, IND.CODE 8–1–2–100, the statutes also provide for relief by one in Morrison's situation who finds that he may have been wrongfully terminated in the form of IND. CODE 34–4–17.5–1. This statute requires an aggrieved party to file a complaint within 30 days after the date of the action or decision complained of. The trial judge found further that "since that remedy was lost" because of noncompliance with the 30-day requirement, the common law concerning employment contracts controls: since the contract between Morrison and the City was of indefinite term, it was terminable at will by either party. Therefore, Morrison had no cause of action.

## STATEMENT OF THE ISSUE

Morrison's only issue on appeal is whether the trial court erred in granting the motion for summary judgment.

## DISCUSSION AND DECISION

Our standard of review was cogently stated by Judge Robertson in *Burdsall v. City of Elwood*, (1983) 454 N.E.2d 434:

"In reviewing a summary judgment motion, we must determine whether there is any genuine issue of material fact and whether the law was correctly applied. The moving party has the burden of establishing that no material facts are in genuine issue. All doubts and inferences are resolved in favor of the non-moving party. Accordingly, the products of discovery are liberally construed in the non-moving party's favor. If there is any genuine issue for the trier of fact, the court must overrule the motion. In applying these rules, the court may not weigh the evidence nor resolve disputes as to different inferences that could be drawn from undisputed facts. The standard of review applied by us is the same

as that of the trial court; summary judgment as a matter of law."

*Burdsall, supra,* at 435 (all citations omitted).

The issue is purely legal; that is, which statute applies to this fact situation. Appellant argues that the provisions of IND. CODE 8–1–2–100 merged into the oral contract of employment between Morrison and the Board; therefore, Morrison could only be fired by the Board for cause and after notice and a hearing as stated in IND. CODE 8–1–2–100. Appellees counter-attack with two different statutes: they contend that Morrison failed to file his complaint within the time or according to the procedural requirements of IND.CODE 34–4–17.5–1 so that it is barred from consideration. The Mayor and the Board also point to IND.CODE provisions 36–4–9–2 and 36–4–11–2, which provide that the tenure of employees such as Morrison is subject to the pleasure of the mayor of the city in which he holds office. The executive may suspend or remove from office any employee appointed by her by notifying him to that effect and sending a written statement of the reasons for suspension or removal to the city legislative body. IND.CODE 36–4–11–2. We note parenthetically that the Mayor did not, however, comply with the provisions of this statute. She did not fire Morrison; the Board fired him, with Dr. Kipp carrying out the mission.

■ IND.CODE 8–1–2–100, as we explained in the facts, *supra,* is part of the Public Service Commission Act of 1913. The Act was repealed after Morrison was fired (3–11–82), effective January 1, 1983, subject to the following proviso:

"This act does not affect any:
(1) Rights or liabilities accrued;
(2) Penalties incurred;
(3) Offenses committed; or
(4) Proceedings begun;
before January 1, 1983. Those rights, liabilities, penalties, and proceedings continue and shall be imposed and enforced under prior statutes as if this act had not been enacted."

IND.CODE 8–1–2–100, as hereinbefore stated, provides that the Utility Service Board shall appoint a manager of the utility and that such manager may be removed by the Board for cause at any time, after notice and a hearing. Since Morrison's tenure at the Frankfort Sewage Treatment Facility extended from 1977–1982, he is clearly "covered" by this statute. We agree with Morrison that the applicable statutory provisions merged into his contract: "the terms and conditions of the contract include all relevant statutory provisions as if such provisions were specifically set out in the contract." *Foley v. Consolidated City of Indianapolis,* (1981) Ind.App., 421 N.E.2d 1160, 1163.

■ The Mayor and the Utility Service Board assert that Morrison may not claim the protection afforded by IND.CODE 8–1–2–100 for two reasons: he did not carry his burden of demonstrating that he was within the class of persons to which the statute applies, and he failed to prove that the municipal entity operating the utilities in Frankfort is a utility service board.

In response, appellant points to testimony in the transcript wherein Gene Robbins, the attorney for the Utility Service Board, questioned Morrison:

Q. Alright. When were you hired, Mr. Morrison?
A. February 11, 1977.
Q. And were you hired into that position as superintendent?
A. Yes.
Q. And who hired you?
A. The five-member board....
Q. Now was that the Utility Service Board of Frankfort, Indiana?
A. As it was constituted then, ...
Q. But it was the Utility Board which governed the Frankfort Sewage Works, is that correct?
A. Right, at that time."

(TR. pp. 43–44).

Further, Morrison refers to appellees' answer to his second amended complaint wherein both his job position and the hiring entity are admitted.

The testimony and the pleadings admissions are sufficient to refute the Mayor and the Board's assertion that there is no evidence in the record showing that the Frankfort utilities were governed by a utility service board and that Morrison was hired by the Board to superintend the waste water treatment facility.

 Setting aside briefly our consideration of 8-1-2-100, we turn to IND.CODE 34-4-17.5-1, which, as is relevant herein, states:

"*An appeal allowed by statute from any action or decision of a board of a city* ... shall be filed as an original complaint against the city ... in the circuit or superior court of the county in which the municipality is located. The complaint on appeal must be filed within thirty (30) days after the date of the action or decision complained of...."

(Emphasis added.)

IND.CODE 34-4-17.5-1 applies only to statutes that contain within their provisions the right to appeal from actions of municipalities. Appellees contend that IND. CODE 8-1-2-115 contains that right of appeal from an alleged violation of 8-1-2-100. IND.CODE 8-1-2-115 states:

"The commission shall inquire into any neglect or violation of the laws of this state or the ordinances of any city or town by any public utility doing business therein, or by the officers, agents or employees thereof, or by any person operating the plant of any public utility, and shall have the power, and it shall be its duty, to enforce the provisions of this act [8-1-2-1—8-1-2-118], as well as all other laws, relating to public utilities. Any forfeiture or penalty herein provided shall be recovered and suit therein shall be brought in the name of the state of Indiana in the circuit or superior court where the public utility has its principal place of business. Complaint for the collection of any such forfeiture may be made by the commission or any member thereof, and when so made, the action so commenced shall be prosecuted by the general counsel."

IND.CODE 8-1-2-115 establishes the duty of the Public Service Commission (PSC) to enforce provisions of the Public Service Commission Act: the jurisdiction of the PSC over such claims is exclusive. *Ind. Bell Telephone Co., Inc. v. Friedland,* (1978) 175 Ind.App. 622, 373 N.E.2d 344. The reasoning behind the entrustment of the authority to control and regulate utilities is stated in *Decatur County REMC v. Public Service Comm'n.,* (1971) 150 Ind. App. 193, 275 N.E.2d 857, a decision cited by the Friedland court:

"As an administrative agency, [the PSC] is presumed to be qualified by knowledge and experience to perform this function. The regulation of public utilities is a technical field requiring expertise... Such questions as to what constitutes a service area, the definition of a secondary line, and the physical ability of a public utility to serve a particular area, are examples of the types of technical questions which the legislature intended the Commission as a qualified administrative agency to answer."

*Friedland, supra,* 373 N.E.2d at 350.

8-1-2-115 contemplates the necessity of having a commission of persons qualified to evaluate the issues in a specialized field inquire into violations of the utilities laws. *Id.* at 352. It does not, however, contemplate that the PSC inquire into the issue of wrongful termination of employment. Further, the commission is not a party here as contemplated by the section. We have not been directed to any statute which gives Morrison a proper judicial review of the questions he sought to assert. *State ex rel City of Marion v. Grant Circuit Court,* (1958) 239 Ind. 315, 157 N.E.2d 188; consequently, we hold that the general provisions of IND.CODE 8-1-2-115 are not applicable to this matter. Since, then, IND. CODE 8-1-2-115 does not provide the appeal from a violation of IND.CODE 8-1-2-100, IND.CODE 34-4-17.5-1 does not apply to the instant case and Morrison's claim is not barred by the 30-day limitation period included within that statute.

There is additional authority which supports our conclusion that Morrison is not bound by the provisions of IND.CODE 34–4–17.5–1. The Utility Service Board did not follow the applicable statute (8–1–2–100) and hold a hearing. In *Lipinski v. Town of Chesterton*, (1972) 151 Ind.App. 109, 280 N.E.2d 628, on a petition for rehearing, the Third District addressed a similar problem. A policeman was removed in a manner not in accordance with the governing statute, IND.CODE 18–1–11–3, in that he was not afforded notice and a hearing. The appellee raised the issue as to whether the policeman was required to perfect his appeal to the circuit court as required by the provisions of IND.CODE 18–1–11–3. As noted by the court, "the board completely subverted not only the procedural steps of the statute, but its underlying policy as well. The board is now attempting to argue that even if such is the case the appellant is still bound by the procedure of the statute". *Lipinski, supra*, 280 N.E.2d at 629. The *Lipinski* court stated that the whole proceeding was void *ab initio* and contrary to law:

> "Since there is no official affirmative decision of the board and since coercive action would be void ab initio and contrary to law, Plaintiff-Appellant is not bound by the procedural steps of I.C. 1971, 18–1–11–3 and the motion to dismiss was improperly granted."

*Id.* at 630. *See also Castor v. City of Winchester*, (1959) 130 Ind.App. 397, 162 N.E.2d 97.

We turn our attention to appellees' second statutory argument; that is, pursuant to IND.CODE sections 36–4–9–2 and 36–4–11–2, Morrison's tenure as superintendent of the Frankfort Sewage Treatment facility was terminable at will by the Mayor. IND. CODE 36–4–9–2 [1] is the provision dealing with the appointment of department heads:

> "(a) Notwithstanding any other law, the city executive shall appoint the head of each department... However, the executive's appointment of the head of the department is subject to the approval of any statutory board or commission established in the department, including and limited to:
>
> \* \* \* \* \* \*
>
> (9) the utility service board, ..."

IND.CODE 36–4–11–2 [2] addresses, in part, the removal from office of appointed officers or employers:

> "(b) the executive may suspend or remove from office any officers, deputies, or other employees of the city appointed by him or a prior executive, by notifying them to that effect and sending a written statement of the reasons for the suspension or removal to the city legislative body."

The Mayor and the Board argue that the above statutes conclusively demonstrate that Morrison served as an employee [3] of the city of Frankfort at the pleasure of its mayor and that 36–4–11–2 impliedly repealed IND.CODE 8–1–2–100.

Our immediate response to this argument is that the record reflects that the decision to discharge Morrison was made by. the Board in executive session, and the notice of discharge was delivered by Kipp, its president. The record discloses that the Mayor did not discharge Morrison; at most, it indicates that she may have suggested such an action to the Board:

> "Q. And did you have any conversation with the Mayor?
> A. No.
> Q. Either before or after, about your termination?
> A. No.
> Q. And you never did have any conversation with her about your job performance?

**1.** As added by Acts 1980, P.L. 212, Sec. 3. Formerly IND.CODE 18–2–1–9 (Burns' Code Ed.), which employed comparable language.

**2.** As added by Acts 1980, P.L. 212, Sec. 3. Formerly IND.CODE 18–1–6–2 (Burns' Code Ed.)

**3.** Appellees do make the argument that Morrison is an "officer"; however, IND.CODE 8–1–2–100 conclusively states that the superintendent is an employee.

A. No."

(R. 105)

Indeed, as a threshold matter,· IND.CODE sections 36–4–9–2 and 36–4–11–2 are inapplicable; for if they are, then Morrison was never discharged at all.

▪ ■ Obviously, the above statutory provisions and IND.CODE 8–1–2–100 are at odds. It is our task to determine which provision takes precedence. We discovered several decisions which at first glance appeared to be guides. *State ex rel. O'Donnell v. Flickinger*, (1937) 211 Ind. 361, 7 N.E.2d 192; *Freyermuth v. State ex rel. Burns*, (1936) 210 Ind. 235, 2 N.E.2d 399; *Kirkpatrick v. City of Greensburg*, (1943) 113 Ind.App. 402, 47 N.E.2d 153. Each case involved a city official or employee who had been appointed pursuant to a particular earlier statute and was terminated by the mayor pursuant to the predecessor of IND.CODE 36–4–11–2, a later statute. The employee complained that his termination was not made according to the requirements of the statute under which he'd been hired; the city argued that the latter act repealed the former statute. However, these cases are not particularly helpful and actually irreconcilable because they involve different time frames, amendments, and statutes than those existing herein. The courts essentially construed the statutes before them based on the facts at hand. We must do the same.

Certain rules of statutory construction are of some aid here. The purpose of all rules of construction is to ascertain the legislative intent. 26 I.L.E., Sec. 113; *Indiana State Board of Tax Commissioners v. Holthouse Realty Corp.*, (1976) 170 Ind. App. 232, 352 N.E.2d 535. The legislative purpose to be attained should be considered. *Lugar v. New*, (1981) Ind.App. 418 N.E.2d 248. Where doubt and uncertainty as to the meaning of a statute exists, a construction thereof by the legislature, if clearly indicated by subsequent enactments, will be given consideration by the courts, and while such construction may not be conclusive, it may be persuasive of legislative intent. *Wilson v. State*, (1978)

270 Ind. 67, 383 N.E.2d 304. Where a statute is uncertain and susceptible to more than one construction, the court may look to prior and contemporaneous statutes to determine its meaning, and examine all legislation *in pari materia*, its legislative history, and all other acts passed either before or after the statute in question. *Hurwich v. Zoss*, (1976) 170 Ind.App. 542, 353 N.E.2d 549. A general statute does not overrule or supersede a specific statute unless the intent is clear. *Sexton v. Johnson Suburban Utilities, Inc.*, (1981) Ind.App., 422 N.E.2d 1293. Finally, implied repeals are only recognized and upheld when the latter act is so repugnant to the earlier as to render the repugnancy or conflict between them irreconcilable. A court will always, if possible, adopt a construction which, under the circumstances of a given case, permits both laws to stand and be operative. *Freyermuth, supra*. With these rules in mind, we examine the competing statutes and their history.

The ancestor statute to IND.CODE 36–4–9–2 and 36–4–11–2 was Acts 1905, Ch. 129, Sec. 80. It outlined the powers and duties of the mayor and provided in part that the mayor may at any time suspend or remove any or all department heads by notifying them to that effect and sending a message to the council stating his reasons for removal. Acts 1933, Ch. 233 was enacted as a measure concerning classification of cities. Section 10 of that Act stated that all officers, deputies, and employees shall be appointed by the mayor and serve at his pleasure, and he could terminate them at any time. The statute was again amended in 1957, and the present version, IND. CODE 36–4–11–2, was enacted in 1980 by recodification.

Meanwhile, IND.CODE 8–1–2–100 was first enacted, as hereinbefore stated, as a portion of the Public Service Commission Act of 1913 and provided for the creation of a utility service board as one of several alternative methods by which a municipality may operate its utility. The section states:

"Such board, when organized, shall select a manager who shall have executive charge of any such utility owned by the municipality. Such manager may be removed by such board for cause, at any time, after notice and a hearing."

IND.CODE 8–1–2–100 was amended in 1933, 1959, 1961, and 1967 but the discharge provision was not altered. The City of Frankfort operated pursuant to this provision, and it remained in existence when Morrison was discharged on March 11, 1982. Significantly, Section 8–1–2–100 was repealed effective January 1, 1983, but on the same date, IND.CODE 8–1.5–3–1 *et seq.* became effective.

IND.CODE 8–1.5–3–3 provides for a utility service board and section 8–1.5–3–4 gives the board general supervisory powers over the utilities under its control as well as the power, subject to IND.CODE 36–4–9–2, to appoint a superintendent or manager of each utility. IND.CODE 8–1.5–3–5(d) provides further that "the superintendent may be removed by the *board* for *cause* at any time after notice and a hearing". (Emphasis added).

Thus, it is clear from the statutory history of IND.CODE 8–1–2–100, existing essentially unchanged from 1913 until the reenactment of 1983, that the utility service board alone, not the mayor, has the specific power to discharge the superintendent. The 1913 Act, enacted for a specific purpose, had the effect of superseding the general 1905 Act. The subsequent legislative amendments and reenactment of those two statutes simply reinforces this conclusion. The legislature intended that the mayor have the power to appoint the superintendent, subject to the board's approval (*see* IND.CODE 36–4–9–2(a)(9) and IND. CODE 8–1.5–3–4(a)(3)), but the power to discharge the superintendent is vested solely in the board. IND.CODE 8–1.5–3–5 does not confer the power to terminate the superintendent on the mayor. Through scrutiny of the repeated reenactments of the language of Section 8–1–2–100, it is clear the legislature never intended that the mayor have plenary powers over the utilities. Such powers, i.e., the supervision, compensation, and removal of the supervisor, were placed in the board.

The trial court erred in granting appellees' motion for summary judgment. We reverse and remand this cause to the trial court for further proceedings.

Judgment reversed.

RATLIFF, P.J., and ROBERTSON, J., concur.