BROWN,, Judge,
concurring in part and dissenting in part.
[31] I concur with the majority’s handling of Curry’s cross-appeal issue regarding his claim under the Wage Payment Statute, but I respectfully dissent from the majority’s conclusions to reverse the trial court’s decision to grant summary judgment in favor of Curry regarding his wrongful discharge claim and to deny the Government’s summary judgment claim on Curry’s intentional interference with employment relationship claim.
[32] This Court has previously examined Ind.Code § 8-1.5-3-5(d) in Morrison v. McMahon, 475 N.E.2d 1174 (Ind.Ct.App.1985),- reh’g denied, trans. denied. In Morrison, the Court examined that statute, as well as its predecessors, and ruled that “it is clear from the statutory history ... existing essentially unchanged from 1913 ... that the utility service board alone, not the mayor, has the specific power to discharge the superintendent.” 475 N.E.2d at 1181. It found that “[t]he legislature intended that the mayor have the power to appoint the superintendent, subject to the board’s approval ... but the power to discharge the superintendent is vested solely in the board,” and that Ind. Code § 8-1.5-3-5 “does not confer the power to terminate the superintendent on the mayor.” Id. The Court concluded that “[tjhrough scrutiny of the repeated reenactments of the language of Section 8-1-2-100,[3] it is clear the legislature never intended that the mayor have plenary powers over the utilities. Such powers, i.e., the supervision, compensation, and removal of the supervisor, were placed in the board.” Id. I agree with the analysis in Morrison.
[33] To the extent the majority opines that this interpretation leads to an absurd result in that the appointment of a utility superintendent “would essentially be a lifer time appointment akin to a federal judge ... unless she commits an impeachable offense,” I disagree. Infra at 899. The *903 Government makes a similar claim in its brief, suggesting that “[fjorcing Jessup to accept the utility head chosen by Ricketts would limit his ability ... to make changes without having to contend with a superintendent who is politically hostile or who does not share or even obstructs the policy objectives of the new leaders.” Appellants’ Brief at 14. However, I believe that in' such a scenario, the USB would be able to remove the superintendent for cause pursuant to Ind.Code § 8-1.5-3-5(d), and that the majority interprets the “for cause” language in the statute too narrowly, limiting its scope solely to impeachable offenses.
[34] The majority also opines that one possible purpose of Ind.Code § 8 — 1.5—3— 5(d) is to act as a check on the mayor. - I am not persuaded by this interpretation, particularly in recognition of the fact that, under Ind.Code § 8-1.5-3-3, the mayor appoints a majority of the board members. The statutory scheme contained in Chapter 3 can be interpreted as creating a board to assist the mayor in implementing his or her agenda related to’ municipal utilities, and, again, a politically hostile superintendent would, in my estimation, be grounds for removal for cause. It also vests the authority to remove the superintendent in the board.
[35] I also respectfully dissent from the majority’s decision to reverse the denial of the Government’s motion for summary judgment on Curry’s claim for intentional interference with his employment relationship because the applicable economic realities test involves determinations of fact which are inappropriate for summary judgment.
[36] I would affirm the trial court in all respects.

. Ind.Code § 8-1-2-100 is the predecessor statute and Was repealed on the same date that Ind.Code § 8-1.5-3-1 et seq. became effective. Morrison, 475 N.E.2d at 1181.