Richard L. **PHEGLEY**, Appellant
(Defendant Below),

v.

**INDIANA DEPARTMENT OF HIGHWAYS, Appellee**
(Plaintiff Below).

**No. 63A01-9006-CV-232.**

Court of Appeals of Indiana,
First District.

Dec. 17, 1990.

Joe D. Black, Ramsey & Black, Vincennes, for appellant.

Linley E. Pearson, Atty. Gen., Brenda Franklin Rodeheffer, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Richard L. Phegley appeals the denial of his petition for judicial review by which he sought the reversal of the Indiana Department of Highways' (IDOH) decision to demote him from District Maintenance Engineer to Highway Engineer III, reinstatement and back pay.

We affirm.

Phegley served as Vincennes District Maintenance Engineer, classified as a Highway Engineer Supervisor IV, from January 1, 1970 until December 4, 1986 when he was demoted to Highway Engineer III, a position with no supervisory responsibilities. Prior to the demotion, on September 30, 1986, the IDOH reprimanded Phegley in writing for discussing personnel matters with persons outside the IDOH. Phegley received an employee appraisal report at the same time which indicated that his performance in employee relations was less than satisfactory. Phegley's immediate supervisor recommended that Phegley be demoted on November 24, 1986, after Phegley authored what was perceived by his supervisor to be an inflated performance appraisal of a subordinate.

Phegley received a pre-demotion hearing and a full review hearing following the demotion before an administrative law judge appointed by the then-director of IDOH. The ALJ recommended that Phegley be demoted. The IDOH adopted the ALJ's proposed findings of fact and conclusions of law. Phegley then sought judicial review. The reviewing court sent the matter back to the IDOH for a hearing on Phegley's petition to introduce newly discovered evidence. The IDOH concluded that the July 14, 1987, IDOH memorandum sought to be introduced by Phegley did not apply to Phegley and would not change the outcome of his administrative appeal. The Pike Circuit Court affirmed the IDOH's determinations.

Phegley maintained throughout the proceedings that as a civil servant he had a vested property interest in his employment protected by the due process clause of the Fourteenth Amendment which entitled him to a specific statement of the reasons for his demotion. He also claimed that, pursuant to state policy, he could not be demoted based upon his performance without an improvement plan, final warning, and a ninety-day period to show improvement, and that he was demoted for engaging in protected speech.

Phegley seeks review of the administrative rulings on each of these issues in this appeal. In addition, he argues that the IDOH's administrative law judge erred in precluding the discovery and admission of certain testimony and exhibits, and that the IDOH's findings of fact are inadequate to sustain its conclusions.[1] Much of Phegley's energy, however, is devoted toward the validity of the stated grounds for his demotion.

 Judicial review of an administrative determination is limited to a determination of whether the agency possessed juris-

---

**1.** This argument appears to be directed primarily at the constitutional issues. The essential facts material to these issues are not in dispute, and the issues lend themselves to resolution as a matter of law. Accordingly, we need not discuss further Phegley's contention that IDOH's findings are insufficient, except as they relate to the claim that his demotion is not based upon substantial evidence.

diction over the matter and whether the order was made in conformance with proper legal procedures. *Mugg v. Stanton* (1983), Ind.App., 454 N.E.2d 867, 869. If the determination was based upon substantial evidence and if it did not violate any constitutional, statutory, or legal principle, we will affirm the decision. *Id.* The burden of proving that the administrative order was arbitrary and capricious or an abuse of discretion falls upon the party attempting to upset the order. We will not attempt to substitute our judgment for that of the agency concerning matters within the scope of that agency's discretion and authority. *Id.*

■■■ The terms and conditions of an employment contract include all relevant statutory provisions as if such provisions were strictly set out in the contract. *Bernhardt v. State* (1985), Ind.App., 479 N.E.2d 1367. IND.CODE 8–9.5–4–4(a) (1980) (repealed by P.L. 112–1989, § 6) authorizes the IDOH to establish the terms and conditions of employment within the department subject to the other subsections of this section. In relevant part, I.C. 8–9.5–4–4 provides:

(b) All employees of the department whose duties require specialized knowledge or skill, acquired by professional or technical education, training, and experience: ...

(3) may not ... be reduced, removed, or in any way ... discriminated against because of their political affiliation, race, religion, color, sex, national origin, or ancestry;

. . . . .

(8) shall be evaluated annually in writing by their immediate supervisor for

the purpose of advising the director as to whether the employees should remain in their positions....

(f) All employees of the department are subject to IC 4–13–1, and the rules that implement it.

(g) Subject to the other subsections in this section:

(1) all employees of the department are subject to demotion, discipline dismissal, or transfer at the discretion of the director and

(2) cause for demotion, dismissal, discipline, or transfer may include but is not limited to failure to satisfactorily effectuate the department's transportation plan and work programs.

Hence, while employees of the IDOH may be demoted at the discretion of the director, that discretion may be restricted by the provisions of I.C. 4–13–1 and the rules that implement it.[2] All IDOH employees are nonmerit employees for purposes of demotion or dismissal.[3] I.C. 4–15–2–3(a); I.C. 4–15–2–4; I.C. 4–15–2.5–1.1.

Pursuant to I.C. 4–15–1.8–8, the state personnel department is required to "develop personnel policies, methods, procedures, and standards for all state agencies." I.C. 4–15–1.8–7(a)(1). At the time of Phegley's demotion, the state department of personnel had promulgated but a single rule governing the demotion of a nonmerit employee. It reads:

An appointing authority or his designee may demote an employee by filing a statement of reasons with the Director and the employee concerned.

31 IAC 1–10–1.

The record shows that the terms and conditions of Phegley's employment are

---

**2.** At the time I.C. 8–9.5–4–4 was enacted, the Department of Administration created by I.C. 4–13–1 included a personnel division. In 1981, the legislature established a state personnel department, abolishing the state personnel division and transferring to the newly-created department the powers and responsibilities of the personnel division. The reference to I.C. 4–13–1 in I.C. 8–9.5–4–4 is to be treated as a reference to the state personnel department and the rules and regulations promulgated by it. I.C. 4–15–1.-8–8.

**3.** The employ of registered professional engineers is also governed by I.C. 4–15–3. This chapter authorizes each department in which there is an engineering service to promulgate rules and regulations governing qualification, classification, salary, appointments, promotions, and transfers. I.C. 4–15–3–3 (amended Acts 1945). The 1945 amendment removed "demotions and dismissals" from the scope of the IDOH's rulemaking. Thus, while a merit system exists for professional engineers, it is not concerned with the terms and conditions of an engineer's demotion.

also contained in an employee's handbook. The handbook specifies certain work rules the violation of which may result in disciplinary action. The manual does not address the circumstances under which an employee may be demoted, but does contain a means of appeal for professional or technical employees who have been demoted or dismissed. This procedure apparently has been created by the IDOH director in his discretion and is promulgated at 120 IAC 1–3–1. While the procedure does authorize judicial review pursuant to I.C. 4–22–1–14, and requires the facts upon which the recommendation of demotion is based be supported by substantial and relevant evidence, it does not contain a standard for demotion, such as cause, or guarantee employment security. At most, it bestows upon Phegley the right to have his demotion reviewed.

■ Thus, it would appear that a professional engineer like Phegley is an employee at will, demotable for any reason or no reason whatsoever. *See Speckman v. City of Indianapolis* (1989), Ind., 540 N.E.2d 1189, 1192. Indeed, we have so held in the past. *Indiana Department of Highways v. Pigg* (1989), Ind.App., 533 N.E.2d 184; *Indiana Department of Highways v. Dixon* (1987), Ind.App., 512 N.E.2d 1113, *reversed on first amendment grounds,* 541 N.E.2d 877. As a general rule, an employee at will has no property interest in further employment. *Pigg,* 533 N.E.2d 184; *Ind. Alcoholic Beverage Commission v. Gault* (1980), Ind.App., 405 N.E.2d 585, *trans. denied.*

Phegley cites *Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 as authority for his asserted property right. But *Loudermill* does not hold that every civil servant has a property interest in continued employment. *Accord Speckman,* 540 N.E.2d at 1193. *Loudermill* holds only that a public employee *who can be discharged only for cause* has such a legitimate claim of entitlement to his position. 470 U.S. at 536, 539–40, 105 S.Ct. at 1490, 1491–92.

■ Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Loudermill, id.* at 538, 105 S.Ct. at 1491 (citing *Board of Regents v. Roth* (1972), 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548). Though state law may have in the past entitled professional engineers in the highway department to certain procedural due process protections upon demotion, *State ex rel. Indiana State Employee's Association v. Boehning* (1979), 182 Ind.App. 684, 396 N.E.2d 422, *trans. denied,* the statutes which were the source of that entitlement have since been repealed. The legislature may elect not to confer a property interest in public employment. *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493.[4]

Phegley cites as the factual basis for his claim he was demoted for engaging in protected speech certain conversations he had after hours with two county chairpersons of the Republican Party. Phegley concedes that the conversations concerned personnel problems within the Vincennes District. (B. 50) Phegley was upset with the status quo and sought political assistance in alleviating internal tensions.

■ Statements by public officials on matters of public concern must be accorded First Amendment protection despite the fact that the statements are directed at nominal superiors. *Pickering v. Board of Education* (1968), 391 U.S. 563, 574, 88 S.Ct. 1731, 1737, 20 L.Ed.2d 811. However, "[t]he First Amendment does not require public offices to be run as a roundtable for employee complaints over internal office affairs." *Connick v. Myers* (1983), 461 U.S. 138, 149, 103 S.Ct. 1684, 1691, 75 L.Ed.2d 708. The record does not disclose

4. To the extent that decisions of this court may suggest that the provision of procedural safeguards endows a public employee with substantive rights, those cases are no longer authoritative. Property cannot be defined by the procedures provided for its deprivation any more than can life or liberty. The categories of substance and procedure are distinct. *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493.

that any part of Phegley's conversations with the party chairpersons was a matter of legitimate public concern about which free and open debate would be vital to informed decision-making by the electorate. *See Dixon*, 541 N.E.2d at 881. Speech not otherwise of public concern does not attain that protected status simply because its subject matter could be of general interest to the public. *Myers*, 461 U.S. at 149, n. 8, 103 S.Ct. at 1691, n. 8.

Since Phegley's statements cannot fairly be characterized as constituting speech on a matter of public concern, we need not scrutinize the reasons for his demotion. Though seemingly unfair, dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review, even if the reasons are alleged to be mistaken or unreasonable. *Myers*, 461 U.S. at 147, 103 S.Ct. at 1690.

The IDOH found reason for Phegley's demotion to a nonsupervisory position in his poor performance in the area of employee relations. Without determining whether an unsatisfactory performance in the area of employee relations constitutes grounds for demotion to a position without supervisory responsibilities, we must conclude that the asserted ground is supported by substantial, relevant evidence as required by the IDOH's complaint procedure, 120 IAC 1–3–6(h)(3), and as found by the ALJ. The record contains three of Phegley's performance appraisals. In each of them, he received either a marginal or unsatisfactory rating.

Phegley maintains that a substandard performance could not be a basis for demotion because state policy entitled him to an additional ninety-day performance improvement plan. As we indicated earlier, however, the state personnel department has only one properly promulgated rule concerning demotion. There is no indication in the record that the content of the memorandum identified by Phegley had

ever been duly promulgated; the testimony from state personnel officials is to the contrary. The memorandum therefore was not intended to have the force of a promulgated rule and we can find no err; in the IDOH's conclusion that the policy was not binding on the IDOH. *See* I.C. 4–15–1.8–7(a)(8) (state department of personnel shall promulgate and enforce personnel rules); *Pigg*, 533 N.E.2d at 185.

Lastly, we address Phegley's contentions that the ALJ improperly curtailed discovery following the first three-day hearing on his demotion and erroneously refused evidence "of Yoho wrongdoing"[5] and of other employees who had received merit increases after having been disciplined during the rating period. Phegley cites no authority for his claim of entitlement to pursue discovery after evidence has been elicited before the agency. He has not alleged or shown what he might have learned by further discovery beyond that disclosed at hearing. Hence, we cannot clearly discern harm.

Likewise, it was Phegley's burden to demonstrate that the proferred evidence was admissible. While it is true that administrative bodies are not bound by the strict common law rules of evidence in the receiving of hearsay evidence, I.C. 4–22–1–8; *Indianapolis & Southern Motor Express, Inc. v. Public Service Commission* (1953), 232 Ind. 377, 112 N.E.2d 864, the rule against the admission of hearsay testimony prevails in administrative hearings, and the agency is not required to admit it. *Robinson v. Twigg Industries, Inc.* (1972), 154 Ind.App. 339, 289 N.E.2d 733, 736. Similarly, evidence which is "irrelevant, immaterial or unduly repetitious" may be excluded. 120 IAC 1–3–6(h)(3).

Phegley has not established that either of the proferred pieces of evidence were admissible. The ALJ sustained the state's hearsay objection with respect to Phegley's list of individuals who received merit increases and Phegley offered

---

**5.** Yoho was a superintendent over whom Phegley had supervisory responsibilities. Phegley suspected Yoho of misusing his state-owned vehicle and attending to personal business on state time.

no exception for the exhibit. Neither has he shown that the purported evidence of wrongdoing by Mr. Yoho, a subject upon which much testimony was offered, was not duplicative of other evidence already admitted. Under these circumstances, we cannot find reversible error.

Judgment affirmed.

RATLIFF, C.J., and CHEZEM, P.J., concur.