Mark R. McCAMMON, Plaintiff–
Appellant,

v.

INDIANA DEPARTMENT OF FINAN-
CIAL INSTITUTIONS, Charles W. Phil-
lips, as Director of the Indiana Depart-
ment of Financial Institutions and indi-
vidually, and John E. Simmonds, as
Deputy Director of the Indiana Depart-
ment of Financial Institutions and indi-
vidually, Defendants–Appellees.

Robert L. MILLER, Plaintiff–Appellant,

v.

INDIANA DEPARTMENT OF FINAN-
CIAL INSTITUTIONS, Charles W. Phil-
lips, as Director of the Indiana Depart-
ment of Financial Institutions and indi-
vidually, and John E. Simmonds, as
Deputy Director of the Indiana Depart-
ment of Financial Institutions and indi-
vidually, Defendants–Appellees.

Nos. 91–3736, 91–3737.

United States Court of Appeals,
Seventh Circuit.

Argued May 19, 1992.

Decided Sept. 1, 1992.

Rehearing and Rehearing En Banc
Denied Oct. 7, 1992.

Peter D. Miller (argued), Indianapolis, Ind., for plaintiff-appellant.

Linley E. Pearson, Atty. Gen., Terry G. Duga, Deputy Atty. Gen. (argued), Federal Litigation, Indianapolis, Ind., for defendants-appellees.

Before FLAUM and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

FLAUM, Circuit Judge.

The sole issue presented in this consolidated appeal brought under 42 U.S.C. § 1983 is whether appellants Mark McCammon and Robert Miller had a protectible property interest to which due process rights attached in their employment with the Indiana Department of Financial Institutions (Department), a state agency. The district court held that they did not, and we reverse.

Until their dismissals on August 17, 1990, McCammon and Miller were employed within the Department as compliance field examiners. McCammon had worked there since 1979, and Miller since 1984. In a telephone conversation on July 30, 1990, John Simmonds, deputy director of the Department, notified Miller that he was to attend an "accreditation meeting" the next day. He did not inform Miller that he would be questioned about his timekeeping records. Simmonds telephoned McCammon the following morning, and conveyed essentially the same information. Later that day Simmonds, along with Department Director Charles Phillips and another Department employee, Chuck Stumpf, held separate meetings with McCammon and Miller.

Unbeknownst to the appellants, the Department had conducted an investigation in early 1990 to determine whether certain examiners were falsifying the time sheets by which they accounted for time spent on their jobs. As part of the investigation, verification forms were sent to companies that had been examined by Department employees. The July 31 meetings addressed certain discrepancies between the appellants' timesheets and company verification forms. The appellants, neither of whom had brought their personal records to the meetings, were unable to account for the discrepancies or to provide specific explanations. At the conclusion of the meetings, Phillips issued letters to McCammon and Miller, suspending them without pay effective the following day. About a week later, at their regular meeting on August 9, the members of the Department authorized Phillips to take further action against all personnel charged in the investigation, including McCammon and Miller. Both men were notified the following day that their employment was terminated, effective August 17.

McCammon and Miller contend that they had a property interest in their positions as financial examiners, and that the Department's actions deprived them of the fourteenth amendment procedural due process protections to which they were entitled. In the alternative, they maintain that even absent such a statutorily defined interest, the conduct of the Department in holding nominal pre-deprivation hearings with the two men supports a finding of a mutually explicit understanding of a protected interest.

At the time McCammon and Miller were terminated from the Department, the statute governing their dismissals read as follows:

Any of the supervisors, examiners, assistants, or employees assigned to or employed in any division of the department *may be removed*, at any time, by the members with the approval of the governor *for inefficiency, incompetency, or neglect of or failure to perform their duties.*

Ind.Code § 28–1–2–15 (1986) (repealed 1991) (emphasis added). In finding that this provision did not grant the appellants a property interest in their jobs, the district court first noted that "[t]he ordinary meaning of the phrase 'at any time' suggests that employees can be dismissed at the discretion of the members." *Miller v. Indiana Dep't of Fin. Inst.*, No. IP 90–1832–C, slip op. at 11 (S.D.Ind. Nov. 15, 1991); *McCammon v. Indiana Dep't of Fin. Inst.*, No. IP 91–127–C, slip op. at 14 (S.D.Ind. Oct. 24, 1991). The court further reasoned that since Indiana common law considers all employees to serve "at will," the statute would be "in derogation of common law if interpreted as providing a property interest in employment." *Miller*, slip op. at 11 (citing *Northern Indiana Public Serv. Co. v. Citizens Action Coalition*, 548 N.E.2d 153, 159 (Ind.1989)); *McCammon*, slip op. at 14 (citing same). According to the court, under Indiana law the legislature makes changes in the common law only by express declaration or unmistakable implication—and neither were present in the provision at issue.

■ The district court concluded that the provision merely "protects employees of the Department from dismissal to the extent that it does not allow their dismissal without the approval of the members of the Department." *Miller*, slip op. at 11; *McCammon*, slip op. at 14. Since the members here had allocated that authority to Phillips, the court held, the Department had complied with the statute and the appellants failed to establish a property interest. We review *de novo* the district court's interpretation of state law, *Salve Regina College v. Russell*, —— U.S. ——, ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991), and respectfully disagree with its determination.

■ It is well established that a claim of an entitlement to property must be "more than an 'abstract need or desire' or a mere expectation on the part of the individual." *Patkus v. Sangamon–Cass Consortium*, 769 F.2d 1251, 1262 (7th Cir.1985) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). Rather, "it is a claim 'on which people rely in their daily lives' and may be created 'by existing rules or understandings that stem from an independent source such as state law.'" *Id.* (quoting *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709). Although a state legislature is by no means compelled to create a property interest in civil service jobs, once it chooses to do so, the constitutional right to due process attaches. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985). Public employees subject to dismissal only for just cause are entitled to oral or written notice of the charges against them, an explanation of the employer's evidence, and an opportunity to present their side of the story prior to their discharge. *Patkus*, 769 F.2d at 1265 (citing *Loudermill*, 470 U.S. at 542–48, 105 S.Ct. at 1493–97).

■ McCammon and Miller contend that the plain language of § 28–1–2–15 granted them an entitlement to continued employment. The statute explicitly listed three specific causes for dismissal ("inefficiency, incompetency, and neglect of or failure to perform their duties"), which, they argue, means that the Department could not remove them for other, nonlisted reasons. In support of their argument, the appellants quote the traditional maxim, "expressio unius est exclusio alterius"—*i.e.*, "[w]hen certain items or words are specified or enumerated in a statute then, by implication, other items or words not so specified or enumerated are excluded." *Health & Hosp. Corp. v. Marion County*, 470 N.E.2d 1348, 1355 (Ind.Ct.App.1984) (citing C.D. Sands, 2A *Sutherland Statutory Construction* § 47.23); *see also Common Council of Peru v. Peru Daily Tribune, Inc.*, 440 N.E.2d 726 (Ind.Ct.App.1982). Under this reasoning, the fact that certain

causes for dismissal are listed by implication excludes any other basis for dismissal. They maintain that to conclude otherwise "would do violence" to the language of the provision, because "[i]t would then be necessary to read the statute as '... may be removed ... for inefficiency, incompetency, or neglect of or failure to perform their duties [*or for any other reason, or for no reason at all* ]." McCammon's Br. at 5–6 (emphasis in original); Miller's Br. at 5 (same).

To buttress this contention, McCammon and Miller refer us to *Smulski v. Conley*, 435 F.Supp. 770 (N.D.Ind.1977). There, the court interpreted a city ordinance providing that police officers "who have been appointed permanently to the police department *may* be discharged or suspended without pay, demoted or reduced in rank or fined for any of the following reasons ... [listing reasons]." *Id.* at 773 (emphasis added). The defendants had argued that the word "may" indicated that the listed reasons for discharge were non-exclusive. The court disagreed, finding that the discretionary language merely gave the employer the option to choose what type of disciplinary action, from among those listed, to impose. The court reasoned that if the defendants' interpretation were accepted, the provision listing specific bases for disciplinary action would be rendered meaningless: "There would be little sense in setting forth reasons for demotion if the [employer] could choose a reason not enumerated on which to base its determination to take disciplinary action." *Id.* at 773–74. McCammon and Miller argue that the same logic applies here. Further, they contend, the word "may" in the phrase "may be removed," like the word "may" in *Smulski*, merely means that the Department is statutorily given the discretion to remove an employee for any one of the three listed causes.

The Department responds with scant briefs which only barely satisfy the strictures of Fed.R.App.P. 28. The meager nine- and ten-page briefs each include a Statement of Facts consisting entirely of a single-spaced verbatim block quote from the district court's opinions. Virtually a full page of each "Argument" section contains full block quotes of the relevant statutory provisions, thus leaving a total of five pages to enlighten this court on the issues, only four of which contain substantive arguments. From this sparce material, the Department offers two case analogies, which it claims support a finding of at-will employment here, and one substantive statutory argument.

The Department first relies upon *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). *Bishop* involved a city ordinance that provided, in relevant part, "If a permanent employee fails to perform work up to the standard of the classification held, or continues to be negligent, inefficient, or unfit to perform his duties, he may be dismissed by the City Manager." 426 U.S. at 344 n. 5, 96 S.Ct. at 2077 n. 5. Based on its understanding of state law, the district court had concluded that the employee had no protected property interest in the position. *Id.* at 345, 96 S.Ct. at 2077. The Supreme Court affirmed that determination, noting that although on its face the ordinance "may fairly be read as conferring" a guarantee of continued public employment, *id.*, "such a reading is not the only possible interpretation; the ordinance may also be construed as granting no right to continued employment but merely conditioning an employee's removal on compliance with certain specified procedures." *Id.*

. Latching on to this reasoning, the Department argues that because the Court construed the *Bishop* ordinance as merely conditioning a right to removal on procedural compliance, the instant ordinance should likewise be interpreted. The Department overlooks, however, that *Bishop* apparently was based largely the principle of deference to the district court's interpretation of state law (a principle which, we note, the Court has since abolished. *See Salve Regina College*, ⸺ U.S. at ⸺, 111 S.Ct. at 1221). After noting, for example, that the district court's construction of the statute was upheld by the Fourth Circuit, "albeit by an equally divided court," the Court observed that it had in comparable

circumstances "accepted the interpretation of state law in which the District Court and the Court of Appeals have concurred *even if an examination of the state-law issue without such guidance might have justified a different conclusion.*" *Id.* 426 U.S. at 345–46 & n. 10, 96 S.Ct. at 2077–78 & n. 10 (citing cases) (emphasis added). While the Court acceded to the district court's interpretation, it did so with the explicit caveat, noted above, that the ordinance also could "fairly be read" as conferring a property right in continued employment.

Moreover, we also note that the district court in *Smulski* discounted the defendants' reliance on *Bishop* largely for the reasons noted above—the Supreme Court's reliance on state law, its deference to the district court's interpretation, and the Court's observation that the ordinance on its face could be read to confer a property right—concluding, "It is clear then that the mere fact that a Marion, North Carolina, ordinance was not found to create a property interest in a policeman's employment [in *Bishop* ] is not dispositive of a similar question concerning a Hammond, Indiana, ordinance." *Id.* at 774. The Department failed to inform us (although, we note with interest, neither did the appellants) of the fact that *Smulski* explicitly distanced itself from *Bishop;* indeed, despite *Smulski's* relevance here, and the appellants' reliance on the case in their briefs, the Department's briefs offered no reference or citation to *Smulski* whatsoever.

The Department also refers us to *Phegley v. Indiana Department of Highways,* 564 N.E.2d 291 (Ind.Ct.App.1990), which addressed a statute containing the following language: "cause for demotion, dismissal, discipline, or transfer may include *but is not limited to* failure to satisfactorily effectuate the department's transportation plan and work programs." *Id.* at 294 (emphasis added). Although the court held that the plaintiff in *Phegley* was an at-will employee, we believe this case actually provides support for the appellants' position; as McCammon and Miller correctly observe, it is the specific language of non-limitation, emphasized above, that prevents the provision at issue in *Phegley* from be-

ing subject to any implied exclusivity such as that found in the *Smulski* statute. If anything, *Phegley* illustrates that had the legislature here intended to make the causes for dismissal of Department employees non-exclusive, it knew how to draft a statute accordingly. Although at argument the Department maintained that the legislature likewise knows how to use words of exclusivity, it provided no tangible examples of statutes containing such language either at argument or in its brief. Thus, that the legislature failed to use non-limitation language (such as that in *Phegley* ) in drafting § 28–1–2–15, militates against finding that the causes were non-exclusive in the instant case.

■ The Department finally argues that the Indiana legislature's subsequent amendment of the relevant provision to explicitly require cause for dismissal, *see* Ind Code § 28–11–2–5 ("An employee of the department may be discharged at any time by the director for just cause") (effective July 1, 1991), indicates that the version in effect at the time McCammon and Miller were fired merely established an at-will employment relation which created no protected property interest. According to the Department, this view is supported by the Indiana rule of statutory construction that the amendment of a statute, absent clear intent to the contrary, raises the presumption that the legislature intended to change the law. *See K. v. G.,* 426 N.E.2d 129, 134 (Ind.Ct.App.1981); *Van Orman v. State,* 416 N.E.2d 1301, 1305 (Ind.Ct.App.1981). The amendment adding the "just cause" language, the Department contends, raises the presumption that the legislature intended to change the law to establish a property right in Department employment, thereby indicating that the previous provision created only an at-will relationship. McCammon and Miller counter that the two versions of the provision are "functional equivalents"—that is, the "for just cause" language in the current version effectuates the same purpose as the "for the following causes" language preceding the listed reasons for dismissal in the prior version. They also note that the phrase "at any

time" is retained in the amended statute, thus calling into question the district court's observation that this phrase in the prior version implied at-will employment.

 Despite the general presumption cited by the Department, we believe that in this case the legislature amended the statute to clarify, rather than alter, existing law. *See Van Orman,* 416 N.E.2d at 1305 (quoting *Indiana Dep't of State Revenue, Sales Tax Div. v. Cable of Brazil, Inc.,* 177 Ind.App. 450, 380 N.E.2d 555, 559–60 (1978)). In interpreting the statute, we "must ascertain the legislative intent by looking at the whole of the act." *Van Orman,* 416 N.E.2d at 1305; *see Evansville v. International Ass'n of Fire Fighters, Local 357,* 516 N.E.2d 57, 60 (Ind. 1987). "We must examine the law existing before, the changes made and the apparent intent for making the changes." *Van Orman,* 416 N.E.2d at 1305. Here, during the relevant period, the statute at issue also contained a provision controlling the *hiring* of Department employees:

> The director shall appoint such deputies, assistants and other employees as may be found necessary to carry on the work of the department. Except as hereinafter otherwise provided, the several deputies, assistants and other employees *shall be chosen for their fitness,* either professional or practical as the nature of the position may require, *irrespective of their political beliefs or affiliations.* The technical or professional qualification of any applicant shall be determined by examination, professional rating or otherwise, as the director, in his discretion, may determine. In so far as may be practicable, the *examiners shall be so appointed that not more than one-half (½) of the examiners shall be adherents of any one political party.*

Ind.Code § 28–1–2–14 (1986) (repealed 1991) (emphasis added). In construing the statute in effect during the relevant time period in its entirety, we find that the policy decision to insulate bank examiners from politics at the front end (*i.e.,* hiring) indicates that the legislative intent likewise would be to shield these employees from discretionary political decisions at the back end (*i.e.,* firing), thereby supporting the appellants' contention that the dismissal provision at issue established a protected interest in continued employment. We agree with the appellants that the amended language is functionally equivalent to that in the previous version, and that the language of the statute as a whole, as well as the nature of the amendment, sufficiently rebuts the presumption. *See K. v. G.,* 426 N.E.2d at 134.

Although at argument the Department proffered additional policy rationales (which, as an original matter, might have some appeal), it again offered no support to back up its claims. The Department maintained, for example, that examiners hold unique and specialized positions; because these positions are closer in line to the chief executive than the typical civil servant, it follows that the positions are more, not less, at-will than those held by the typical civil servant. Given the preceding discussion, however, it is equally as reasonable to speculate that the specialized nature of these positions requires *added* procedural protections. Indeed, a common sense interpretation would indicate that the legislature's intent regarding the hiring and firing provisions should be viewed in the conjunctive; a statute whose aim is to prevent political hiring likewise would embrace the goal of protecting Department employees from political firing.

We find that McCammon and Miller had a protectible property interest in their employment with the Department, and therefore were entitled to constitutionally adequate due process procedures prior to their removal. Given this, we need not address the appellants' argument that the Department's conduct in meeting with the appellants prior to their dismissals constituted recognition of an implied understanding of a protected property interest. We reverse the determination of the district court in regard to both McCammon and Miller, and remand for a determination of whether the Department afforded the appellants consti-

tutionally adequate notice and pre-deprivation procedures prior to their dismissals.

REVERSED AND REMANDED.