Blythe A. WHINERY, Edward M. Guljas, Glenn Lange and Stuart Shipman, Individually and as Representatives Of a Class of Similarly Situated Persons, Appellants–Plaintiffs,

v.

Sue ROBERSON, et al, Appellee–Defendant.

No. 49A05–0311–CV–599.

Court of Appeals of Indiana.

Dec. 17, 2004.

466

Robert M. Kelso, Eric D. Johnson, Kightlinger & Gray, LLP, Indianapolis, IN, Attorneys for Appellants.

Steve Carter, Attorney General of Indiana, David L. Steiner, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Blythe Whinery, on behalf of herself and a class of similarly situated plaintiffs, ("the Employees") filed a complaint against Sue Roberson (hereinafter "the State"), in her official capacity as Director of the State Personnel Department ("the SPD"), in Marion Superior Court. The trial court entered judgment against the Employees' complaint by way of summary judgment, and the Employees appeal, presenting the following restated issues for review:

I. Whether the State properly designated evidence to the trial court;

II. Whether the SPD's conduct complied with the Employees' contractual rights;

III. Whether the SPD's conduct complied with the Employees' statutory rights;

IV. Whether the SPD implemented a classification system as required by Public Law 70–1996, section 3 ("P.L.70–1996"); and,

V. Whether the Employees have a remedy pursuant to 42 U.S.C. section 1983 or the Indiana Constitution.

We affirm in part, reverse in part, and remand to the trial court for proceedings consistent with this opinion.

### Facts and Procedural History

P.L. 70–1996 states:

(a) The director of the [SPD] established by IC 4–15–1.8–2 shall do the following:

 (1) Make a survey of state government classification systems and salary schedules for professional employees in the types of natural resources professions that are employed by the department of natural resources for the following states: Michigan, Ohio, Illinois, Kentucky, Wisconsin, Minnesota, Missouri, Kansas and Nebraska.

 (2) Prepare a classification system and salary schedule for the professional employees of the department of natural resources who are employed in natural resource professions that:

 (A) reflect the results of the survey conducted under subdivision (1); and

 (B) provide for classifications and salary adjustments that are based on education and experience.

 (3) Implement the classification system and salary schedule developed under subdivision (2) in the 1997–1998 state fiscal year.

P.L. 70–1996 § 3.

Pursuant to P.L. 70–1996, the SPD forwarded a survey request to the Central States Compensation Association ("CSCA") on June 6, 1996.[1] The SPD's requested survey designated salaries for selected Department of Natural Resources ("DNR") job classifications. On July 1, 1996, the requested CSCA survey was published, with six of the nine states listed in P.L. 70–1996 participating. To complete its research, the SPD faxed a similar survey to Ohio, Kentucky, and Michigan, which are not members of the CSCA.

In March of 1997, the SPD published its compiled research results in a document entitled "Professional Classification Salary Survey and Analysis for the Indiana [DNR]" ("the 1997 Survey"). The 1997 Survey concluded Indiana salaries were artificially lower than the nine comparative states listed in P.L. 70–1996, but also concluded that wages within ninety percent of the market average were competitive, and recommended no action be taken. Appellants' App. pp. 260–62.

After the publication of the 1997 Survey, the legislative sponsor of P.L. 70–1996 and other members of the General Assembly made it known that they were not pleased with the 1997 Survey's recommendations. Consequently, the SPD departed from the 1997 Survey's recommendation that no action be taken.

The SPD ran the average salary of DNR employees in the nine states listed in P.L. 70–1996 ("the nine-state average") and Indiana DNR salary data through a series of calculations to create a figure (referred to as the "target factor") for each job classification that, when multiplied by the employee in question's salary, would raise the employee's salary to ninety percent of the nine-state average.[2]

---

1. The CSCA is an association of state governments that compiles information from member states regarding state employee compensation.

2. The SPD has a policy of targeting salaries at ninety percent of the market average—believing that the Indiana state work environment and benefits package mitigate the comparatively lower salary.

Before applying the target factor to Indiana DNR salaries, the SPD "trended" the nine-state average to account for wage inflation occurring between its survey and P.L. 70–1996's final implementation. The Department of Labor determined the average salary increase between 1997 and 1998 was two point seven percent. Accordingly, the SPD trended the nine-state average by 1.027.[3] After trending the nine-state average, the SPD multiplied it by 0.90 to effectuate its ninety-percent of the market average policy. The resulting figure is referred to as the "ninety-percent survey results."

The SPD then compared the ninety-percent survey results to the salaries of Indiana DNR employees. The SPD first multiplied the salary of each Indiana job classification by 1.04 to account for a four-percent raise given to all state employees in 1997. This figure was then multiplied by 1.09 to account for the SPD's intent to raise the skill-level designation for each Indiana job classification and provide for a corresponding nine-percent salary increase. The 1997 Indiana salaries multiplied by 1.04 and 1.09 is referred to as the "1997 Indiana average." After compiling the ninety-percent survey results and the 1997 Indiana average, the SPD determined the percentage difference between each figure to arrive at the target factor.[4]

The SPD determined P.L. 70–1996's reference to "professional employees" only required salary increases for DNR employees with positions unique to the DNR and employees classified as professional, administrative, and technological ("PAT"), and supervisory and managerial ("SAM/PAT") and executive, scientific, and medical ("ESM") job classifications were not given salary increases. Though it is undisputed that the positions of director of state parks, director of land acquisition, entomologists, pedologists, and museum specialists are considered professional, the SPD concluded these positions are not unique to the DNR and excluded them from P.L. 70–1996's salary increases.[5] P.L. 70–1996's salary increases were also limited to those employed by the DNR on or before June 17, 1998.

On June 17, 1998, the SPD completed its implementation of P.L. 70–1996 by multiplying the designated DNR employees' initial salary by the target factor and adding the 1997 Indiana average percentage increases.[6]

On June 26, 1998, the Employees filed a complaint against the State, alleging the SPD failed to comply with P.L. 70–1996. The Employees were certified as a class on November 8, 1999. On April 30, 2003, the State filed a motion for judgment on the pleadings. The Employees moved to con-

---

**3.** The time between the 1997 Survey, July 1, 1996, and P.L. 70–1996's final implementation, June 17, 1998, was not one year but twenty-three months. Thus, to properly trend the survey results, it would have been necessary to multiply the nine-state average by 1.05 to account for the additional eleven months.

**4.** This calculation is as follows: [1997 Indiana average—ninety-percent survey results = target factor; 1997 Indiana average × target factor = final salary]. This calculation is not mathematically sound. For instance: $[(80 - 100) \div 100 = 0.20; 80 \times 1.20 = 96; 96 \neq 100]$. Ms. Roberson indicat-

ed she was subsequently made aware of this mathematical error. Appellants' App. p. 332.

**5.** While researching DNR salaries in the nine states listed in P.L. 70–1996, the SPD included these excluded job classifications in its surveys faxed to Ohio, Kentucky, Michigan, and the CSCA.

**6.** By multiplying the target factor by the original salary rather than the 1997 Indiana average and leaving a larger number between the original salary and the ninety-percent survey results, the effect of the SPD's mathematical error was exacerbated.

vert the State's motion to a motion for summary judgment, and the trial court granted the States' motion on June 2, 2003. On November 5, 2003, the trial court granted the State's Motion for Summary Judgment, dismissed the Employees' complaint, and issued findings of fact and conclusions of law. The Employees now appeal.

## I. Standard of Review

Summary judgment should be granted only if the evidence authorized by Trial Rule 56(C) shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C) (2004). When reviewing the grant or denial of a motion for summary judgment, this court views the facts and reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *Kennedy v. Guess Inc.*, 806 N.E.2d 776, 779 (Ind.2004).

Though the trial court's decision is "clothed with a presumption of validity," a reviewing court faces the same issues that were before the trial court and analyzes them the same way. *Id.* (quoting *Wright v. Carter*, 622 N.E.2d 170, 171 (Ind.1993)). While the non-movant bears the burden of demonstrating the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure the non-movant is not wrongly denied his or her day in court. *Id.*

## II. Designation of Evidence

■ Initially, the Employees contend pages 22–23, 26–28, 62–64, and 89–92 of the Deposition of Eric Scroggins ("Scroggins") and pages 6–7, 9–12, 28–29, and 36–40 of the Deposition of Jeff Hendrickson were not cited to the trial court by the State and this failure precludes this evidence's consideration on appeal. Reply Br. of Appellant at 7.

■ When reviewing the grant or denial of a motion for summary judgment, this court may consider only those portions of the pleadings, depositions, or any other matter "specifically" designated to the trial court. *Thomas v. N. Cent. Roofing*, 795 N.E.2d 1068, 1071 (Ind.Ct.App.2003).

Indiana Trial Rule 56(C) does not mandate the manner in which a party is to specifically designate material. Provided that the trial court is apprised of the specific material upon which the parties rely in opposition to a motion for summary judgment, the material may be considered.... To comply with the designation requirement, a party may designate an affidavit either by providing specific page numbers and paragraph citations, or by specifically referring to the substantive assertions relied upon. However, the designation of pleadings, discovery material and affidavits in their entirety fails to meet the specificity requirement of T.R. 56.

*Van Eaton v. Fink*, 697 N.E.2d 490, 494–95 (Ind.Ct.App.1998) (internal citations omitted). The purpose of the specific designation requirement is to decrease the evidentiary material trial courts are required to sift through when ruling on motions for summary judgment. *Abbott v. Bates*, 670 N.E.2d 916, 922 (Ind.Ct.App. 1996), *trans. denied.* Because the State was required to designate the above-cited deposition testimony to the trial court in order to rely upon it on appeal and failed to do so, this court may not consider the corresponding information cited in the State's Appellee's Brief.

The Employees also contend the State relies upon the report of Robert Roeder ("Roeder") on appeal and, though it designated this report to the trial court, the State provided no specific citation. The Employees assert the State's lack of specific citation precludes this court's consid-

eration of the report. In its Reply in Support of Summary Judgment, the State clearly cites page five of Roeder's report to the trial court, and we therefore reject the Employees' contention.[7] Appellants' App. p. 55.

### III. Contractual Rights

The Employees next contend the trial court erred in entering judgment against them on their complaint because P.L. 70–1996 creates contractual rights that allow them to enjoin the SPD.

#### A. *Whether contractual rights exist is a question of law*

The State asserts the Employees may not recover in contract because there is no contract upon which to base their recovery and the existence of a contract is a prerequisite to contractual recovery. Although administrative agencies are vested with considerable discretion when implementing a statute that calls upon the agency to effectuate the legislature's will, the question of whether P.L. 70–1996 creates contractual rights for the Employees is not a question the SPD was called upon to answer in its administrative capacity and, thus, is a question of law entirely within the province of the court. *See Orr v. Westminster Village N.*, 689 N.E.2d 712, 721 n. 16 (Ind.1997). We will therefore proceed to consider the nature of the relationship between the Employees and the State at issue in this case.

#### 1. *Employment at will*

■ The State asserts there is no contractual relationship between the Employees and the State because the Employees are at-will employees. Br. of Appellee at 13 (citing *Orr*, 689 N.E.2d at 717–18). *Orr*

notes that, in Indiana, the presumption of at-will employment is strong, and the Indiana Supreme Court is disinclined to adopt a broad and ill-defined exception to the employment at will doctrine. 689 N.E.2d at 717–18. However, *Orr* does not indicate that an employment at will relationship is noncontractual. *Id.*

■ An at-will employee may not sue in contract for wrongful termination. *Holtz v. Bd. of Comm'rs*, 560 N.E.2d 645, 646 (Ind.1990). However, "[e]ither an employment agreement to work for a specified period of time or an employment at will relationship is considered contractual." *Remmers v. Remington Hotel Corp.*, 56 F.Supp.2d 1046, 1052 (S.D.Ind.1999) (citing *Bochnowski v. Peoples Fed. Sav. & Loan Ass'n*, 571 N.E.2d 282, 284 (Ind.1991)). "Parties in an employment at will relationship have no less of an interest in the integrity and security of their contract than do the parties in any other type of contractual relationship." *Id.* *See also Morrison v. McMahon* 475 N.E.2d 1174, 1176–77 (Ind.Ct.App.1985) (at-will employees receiving contractual recovery); *Bernhardt v. State*, 479 N.E.2d 1367, 1369 (Ind. Ct.App.1985); *Phegley v. Ind. Dep't of Highways*, 564 N.E.2d 291, 291 (Ind.Ct. App.1990), *trans. Denied.* Therefore, although the length of their relationship is not governed by contract, the Employees' employment at will status does not prevent the creation of additional contractual rights under P.L. 70–1996.

#### 2. *The nature of the State employment relationship*

■ The State contends, "[the Employees] simply request that this Court assume

---

7. This issue is addressed solely to demarcate the evidence upon which this opinion relies and to avoid unnecessary future litigation concerning the evidence's alleged consideration on appeal. However, the evidence in question is largely peripheral to the issues and does not significantly affect the parties' pertinent contentions.

[the Employees] have a contract with the [S]tate, and that the terms of [P.L.] 70 automatically become incorporated into the terms and conditions of their non-existent employment contract." Br. of Appellee at 13. In this contention, the State is mistaken.

&#9644; A government employee may sue for violation of employment rights in contract, and the terms and conditions of the employee's contract include "all relevant statutory provisions as if such provisions were specifically set out in the contract." *Foley v. Consol. City of Indianapolis,* 421 N.E.2d 1160, 1163 (Ind.Ct.App.1981). *See also Morrison,* 475 N.E.2d at 1176–77; *Bernhardt,* 479 N.E.2d at 1369; *Phegley,* 564 N.E.2d at 294. A government employee's relationship with the State, although not necessarily defined by a written employment contract, is "purely contractual." Laws having to do with remuneration become part of the employment contract, and so attach themselves as an incident thereof. *Marter v. City of Vincennes,* 118 Ind. App. 586, 590, 82 N.E.2d 410, 411 (1948). Thus, the Employees' state-employee status establishes a contractual relationship, and the remuneration provisions of P.L. 70 are an incident thereof.

### 3. *Lack of a designated written contract*

&#9644; The State also asserts the Employees cannot establish a contractual relationship because they failed to enter a contract into evidence. However, there is no indication that the Statute of Frauds governs the terms of the Employees and State's contractual relationship. *See* Ind.Code § 32–21–1–1 (2002). Indiana's Statute of Frauds extends only to agreements that cannot be performed within one year. *Id.* It is axiomatic that at-will employment is not covered by such a provision. *Id.* Because there is no requirement that a written contract exist in the first place, the State's contention in this regard fails.

### 4. *Contract Elements*

&#9644; The State finally asserts there is no contractual relationship because the elements required to establish a contract are not present. However, as discussed above, the Employees' undisputed state employee status establishes a contractual relationship as a matter of law. Furthermore, the contractual elements are established by the State's (1) offer to pay (2) consideration for the Employees' services and (3) the Employees' acceptance through performance. *See Henthorne v. Legacy Healthcare, Inc.,* 764 N.E.2d 751 (Ind.Ct. App.2002).

### B. *"Acquiescence" by the Employees*

&#9644; In the alternative, the State asserts the Employees forfeited their contractual rights because they continued to work and accept payment. The State notes:

> When an employee has failed to protest that he was entitled to additional compensation, it raises the conclusive presumption that the amount received by the employee was accepted in full payment of what was due him ... where an employee continues and acquiesces in the terms of his employment, he waives any right to claim additional compensation.

Br. of Appellee at 16 (quoting *Rose Acre Farms v. Cone,* 492 N.E.2d 61, 66 (Ind.Ct. App.1986), *trans. denied.*

If we are to retain any semblance of a civil society, the State's acquiescence claim must fail. *Rose* does not specify the manner in which employees must "protest" their grievances. In fact, the Employees filed their lawsuit protesting the SPD's actions two weeks after P.L. 70's implementation. The fact that the Employees

decided to challenge the SPD's actions by bringing their grievances to a court of law rather than by the State's suggested resolution of walking off the job does not amount to acquiescence. Forcing employees to walk off the job in order to preserve their contractual rights would be a dubious rule at best. Such a rule would only lead to increased polarization and would substantially disrupt services to the citizens of the State.

### C. Whether the SPD violated the Employees' contractual rights

■■■ The reason the Employees are suing under contract rather than suing under statutory recovery alone is because, when the State contracts with a private citizen, the State's interpretation of the disputed contract receives no deference. *See State v. Feigel,* 204 Ind. 438, 178 N.E. 435, 437 (1931). In contrast, courts are highly deferential to administrative interpretations of statutes. The absence of administrative deference under contract theory, if read as broadly as the Employees are requesting, would allow contractual recovery where purely statutory recovery must be precluded.

Though clever, the Employees' theory must be carefully examined so as not to divest the SPD, as an administrative agency, of discretion conferred upon it by the legislature. In this examination, courts must specifically delineate between actual rights conferred by a statute and agency discretion in implementing a statute. The former is governed by canons of contract construction; the latter is not. *See Foley,* 421 N.E.2d at 1163 (the terms of the contract include all "relevant" statutory provisions).

The Employees may recover contractually for deprivations of actual rights conferred upon them by P.L. 70–1996 but may not recover for the SPD's discretionary

actions. For this reason, the Employees' contractual recovery will be limited to what the Employees may recover under P.L. 70–1996.

### IV. The Employees' Statutory Rights

The Employees contend the trial court erred in entering summary judgment against them on their complaint because P.L. 70–1996 also creates a statutory remedy that allows them to enjoin the SPD.

### A. P.L. 70–1996's statutory remedy

■■■ As with the existence of a contract, the question of whether P.L. 70–1996 creates a private cause of action is a question of law for the court. When interpreting a statute:

> appellate courts independently review a statute's meaning and apply it to the facts of the case under review. If a statute is unambiguous, that is, susceptible to but one meaning, [courts] give the statute its clear and plain meaning. If a statute is susceptible to multiple interpretations, however, [courts] must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent.

*State v. Evans,* 810 N.E.2d 335, 337 (Ind. 2004).

#### 1. Public v. private benefit

■■■ A private cause of action generally will be inferred where a statute imposes a duty for a particular individual's benefit. *Maynard v. Flanagin Bros. Inc.,* 490 N.E.2d 1147, 1148–49 (Ind.Ct.App. 1986), *trans. denied.* A private cause of action will not be inferred where the legislature imposes a duty for the public's benefit. *Borne v. Northwest Allen County Sch. Corp.,* 532 N.E.2d 1196, 1203 (Ind.Ct. App.1989), *trans. denied.*

The Employees assert P.L. 70–1996 confers benefits upon them because the stat-

ute relates to their remuneration, and "the legislative purpose [of P.L. 70–1996] was to prevent Indiana from being at the bottom of the pay scale as compared to surrounding states." Br. of Appellant at 37. This "purpose," that of preventing Indiana from being at the bottom of the pay scale, is more appropriately described as a public benefit. The Employees also state, "[t]he purpose of the statute is to make Indiana more competitive with the surrounding states." Br. of Appellant at 39. This proffered purpose also speaks to a public benefit.

The State cites *Americanos v. State,* 728 N.E.2d 895 (Ind.Ct.App.2000), *trans. denied,* in support of its position that P.L. 70–1996 benefits the public. *Americanos* held that the State Personnel Act ("SPA") did not confer a private cause of action because the purpose of the SPA was "to promote governmental efficiency by hiring qualified employees through a merit-based system." *Id.* at 898.

The SPA's public benefit is distinguishable from *Americanos* and P.L. 70–1996. The SPA's purpose is to test and rank applicants for prospective state employment positions. Unlike the statute at issue, the SPA's application is prospective rather than immediate, and one cannot know with certainty what individuals will be affected by the SPA. Furthermore, the SPA specifically states its purpose is to promote efficiency by hiring qualified employees through a merit-based system. *Id.* at 897. No such statement is found in P.L. 70–1996.

█ Both the Employees and the State fail to acknowledge that P.L. 70–1996, like many statutes, confers public *and* private

benefits. While determining whether the statute at issue created a private cause of action, *Borne* stated, "if it appears that the duty imposed was *merely* for the benefit of the public [a private cause of action will not be inferred]." 532 N.E.2d at 1203 (emphasis added). *Americanos,* states "[If] ... it appears that the duty imposed is *also* for the benefit of particular individuals [a private cause of action may be inferred]." 728 N.E.2d at 897 (emphasis added). Taken together, these two holdings lead us to conclude that statutes that confer public and private benefits, like P.L. 70–1996, establish a private cause of action. Indeed, it makes little sense to preclude recovery for violations of specific rights merely because the public receives an ancillary benefit from the statute conferring the rights.

#### 2. Specific Rights

█ The State also claims P.L. 70–1996 does not create a private cause of action because it does not refer to specific rights. Br. of Appellant at 19 (citing *State v. Hensley,* 661 N.E.2d 1246 (Ind.Ct.App. 1996)).[8] The State is effectively requesting this court to create a completely new, two-tiered analysis for determining whether statutes create a private cause of action: (1) whether the statute benefits the public or an individual and (2) whether the statute addresses specific rights. The State's contention is not supported by case law and is rejected. The specificity of a statute speaks to the breadth of statutory rights; specificity does not speak to the existence of a private cause of action.

#### B. Legislative Acquiescence

The State also claims the legislature's refusal to amend P.L. 70–1996 requires

8. Importantly, *Hensley* does not discuss or debate the viability of a private cause of action. *Hensley,* 661 N.E.2d at 1247–50. Accordingly, *Hensley* does not indicate that specificity relates to the existence of a private

cause of action and does not indicate that this court must depart from the public/private benefit distinction for the purpose of determining the existence of a private cause of action.

this court to defer to the SPD's interpretation. However, in order to invoke properly the doctrine of legislative acquiescence, the administrative interpretation in question must be "long standing." *Miller Brewing Co. v. Bartholemew Co. Beverage Co.*, 674 N.E.2d 193, 206 n. 10 (Ind.Ct.App. 1996), *trans. denied.* Here, the Employees filed their complaint two weeks after P.L. 70–1996's implementation; therefore, legislative acquiescence is inapplicable.

### C. Did the SPD violate the Employees' statutory rights

It is a well-established general policy to acknowledge the expertise of agencies in the interpretation and enforcement of statutes within their purview. *Ind. Wholesale Wine & Liquor Co. v. State*, 695 N.E.2d 99, 105 (Ind.1998) (citing *Sullivan v. Day*, 661 N.E.2d 848, 854 (Ind.Ct.App.1996) (where the plaintiff and administrative agency both adopt plausible interpretations of a statute, the trial court erred in not deferring to the reasonable administrative interpretation)).

P.L. 70–1996 instructed the SPD to prepare a classification system that *"reflect[s]"* the results of its requisite survey. P.L. 70–1996 § 3 (emphasis added). The Employees contend P.L. 70–1996 did not vest the SPD with discretion because the dictionary definition of the term "reflect" means to "embody in a faithful way or to match, copy, echo, or reproduce." Br. of Appellant at 24.

However, when an object is reflected, it is superimposed upon an existing background. For example, if one sees his or her reflection in water, not only are the viewer's features visible; other background features, such as ripples or cloudiness of the water or clouds in the sky behind the viewer, are discernable in the reflection. Accordingly, it was at least reasonable for the SPD to conclude that the term "reflect" indicated that the policies and procedures typically applied to Indiana salaries should form the background and affect the implementation of the nine-state average. Arguably, the SPD's interpretation is even more reasonable than that argued by the Employees. At the very least, the SPD's interpretation is a reasonable interpretation competing with the Employees' interpretation, and this court is therefore required to defer to the SPD's interpretation. *See Sullivan*, 661 N.E.2d at 854.

Also, many of the Employees' own statements suggest P.L. 70–1996 vests the SPD with discretion. The Employees acknowledge, "[P.L. 70–1996] on its face is not as precise as the statute involved in *Hensley.*" Reply Br. of Appellant at 15. Lack of precision suggests the General Assembly is vesting the SPD with discretion to augment the statute. The Employees also state, "if there is ambiguity in [P.L. 70–1996], that ambiguity arises from the word reflect." Br. of Appellant at 24. It is telling that the Employees' admitted possible ambiguity points to the term that vests the SPD with the discretion it argues it has. Finally, the Employees assert they are entitled to relief because the nine-state average was improperly trended. Yet, trending was only implemented because of the SPD's discretionary policies.

For all of these reasons, P.L. 70–1996's use of "reflect" indicates the General Assembly vested the SPD with discretion, and the SPD's policies and procedures, such as trending, may be used by the SPD in exercising its discretion. Accordingly, the SPD's implementation should not be vacated unless the SPD exceeded its discretion.

### 1. The ninety percent of the market average policy

█ The Employees contend it was improper for the SPD to implement P.L.

70–1996's salary increases at ninety percent of the survey results because ninety-percent implementation is not found in P.L. 70–1996. Had P.L. 70–1996 stated the SPD was required to implement salary increases at one hundred percent of the survey results or other equally clear directive, the Employees would undisputedly have a viable cause of action. However, P.L. 70–1996 made no such statement. Rather, P.L. 70–1996 indicated that DNR salaries must "reflect" the survey results. Accordingly, the SPD had the discretion to allow its standing policies to form the background of P.L. 70–1996 and increase salaries commensurately to the nine-state average-just as a reflected object is not necessarily the same size as the object reflected but is commensurate to it.

The Employees also contend that allowing the SPD to exercise its discretion in implementing the survey results renders P.L. 70–1996 completely meaningless because the SPD could choose any percentage of the survey results and, thus, implement any salary increase it desired. Clearly, at some made lower percentage, the SPD's exercise of discretion might be vacated as unreasonable and abusive. However, we cannot say as a matter of law that the ninety percent policy, in conjunction with the SPD's quality/cost of living and benefits considerations, is unreasonable or an abuse of discretion.

### 2. *Excluded DNR professional employees*

■ The Employees challenge the SPD's decision to limit P.L. 70–1996's salary increases to DNR employees with job classifications unique to the DNR and classified as PAT.

■ The Employees first contend this court is not required to give deference to the SPD's decision because the SPD had a prior inconsistent interpretation of P.L. 70–1996. However,

> an administrative agency is not disqualified from changing its mind; and when it does, the court still sits in review of the administrative decision and cannot approach the statutory construction issue de novo and without regard to the administrative understanding of the issues.

*Good Samaritan Hosp. v. Shalala,* 508 U.S. 402, 417, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993). On the other hand, an agency's interpretation of a relevant provision that conflicts with an earlier interpretation is entitled to considerably less deference than a consistently held agency view. *Id.* Accordingly, if the Employees establish such an inconsistent interpretation, the SPD's determination is entitled to less deference.

P.L. 70–1996 included in its scope "*professional employees* of the department of natural resources who are employed in natural resources professions." P.L. 70–1996(a)(2) (emphasis added). The record conclusively establishes that the SPD initially believed the DNR employees it eventually excluded from the implementation of P.L. 70–1996 were to be included within the statute, as these excluded professionals were listed in SPD documents related to P.L. 70–1996's implementation. *See* Appellant's App. pp. 140–59, 160–91, 341. The SPD may not take actions it took indicating that it interpreted P.L. 70–1996 to include the job classifications at issue and now assert on appeal that P.L. 70–1996 does not require such an application. Accordingly, the language of P.L. 70–1996 and the SPD's own conduct indicate the legislature intended all professional DNR employees at issue to be given salary raises.

### 3. *Mathematical errors*

█ It is undisputed that the SPD committed mathematical errors that caused the survey results to be trended improperly and caused DNR salaries to be implemented below ninety percent of the market average.[9] Mathematical errors are, by definition, arbitrary, capricious, and a manifestation of a clear error.

Although we can conclude the SPD was vested with discretion in implementing the survey results, the SPD's implementation of the survey results in a manner that is demonstrably and mathematically erroneous exceeds its statutory discretion. For this reason, we direct the SPD to correct the mathematical errors it committed while implementing P.L. 70–1996.

### 4. *Summary judgment*

█ The Employees contend the undisputed facts fail to establish the existence of the ninety-percent policy as a matter of law. Specifically, the Employees note that—before the SPD's final implementation of P.L. 70–1996—Scroggins stated:

> For those classes (and corresponding family) surveyed, promote w/an exception to the salary policy equivalent to the survey results (maybe 90% of it but possibly 100%).

Br. of Appellant at 26 (citing Appellants' App. p. 334). The Employees also note that an in-house memorandum by SPD counsel, Keith Beesley ("Beesley"), failed to reference the SPD's ninety-percent policy. Br. of Appellant at 27 (citing Appellants' App. p. 336). The Employees assert that, though there are numerous possible explanations for these statements, the standard of review requires this court to construe all inferences against the State. The Employees' quoted statements create a possible inference that the SPD either never had a ninety-percent of the market average policy or never honestly believed the policy was applicable to P.L. 70–1996. Because there exits a possible inference as to the legitimacy of the SPD's ninety-percent of the market average policy, summary judgment was not appropriate.

## V. Classification System

The Employees claim the SPD failed to implement a classification system as required by P.L. 70–1996. The Employees argue,

> Simply put, merely bumping all employees up one skill level does not qualify as preparing a classification system and salary schedule that reflected the results of [P.L. 70–1996]. [P.L. 70–1996] contemplated preparation of a document reflecting the minimum and maximum bi-weekly and annual salaries for state jobs by job category and skill level; what Defendants provided was a simple increase in pay for each employee. As a matter of law this fails to satisfy the dictates of [P.L. 70–1996].

Br. of Appellant at 45–46.

It is undisputed that P.L. 70–1996 requires the SPD to implement a classification system that "provide[s] for classifications and salary adjustments that are based on education and experience." P.L. 70–1996(a)(2)(B). Sue Roberson indicated that the classification system required by the statute means "a document reflecting the minimum and maximum bi-weekly and annual salaries for state jobs by job cate-

---

9. These errors are acknowledged by the SPD and have been explained and discussed previously. For example, if the SPD intended to raise a DNR employee salary from $40,000 to $45,000 using their aforementioned mathematical formula, the raise would amount to roughly a $44,444 salary instead of a $45,000 salary.

gory and skill level." Appellants' App. p. 329.

No such document was ever produced by the SPD. Accordingly, we direct the SPD to produce "a document reflecting the minimum and maximum bi-weekly and annual salaries for state jobs by job category and skill level" so as to comply with P.L. 70–1996.

## VI. Remedies

The Employees claim they have a remedy under 42 U.S.C. section 1983 and Article One, Section Twenty–One of the Indiana Constitution.

### A. 42 U.S.C. section 1983

 The State asserts the Employees may not receive retrospective relief pursuant to 42 U.S.C. section 1983. This is a correct statement of the law. A State employee—Sue Roberson—sued in her official capacity is not a "person" pursuant to 42 U.S.C. section 1983 when sued for retrospective relief. *Severson v. Bd. of Tr.*, 777 N.E.2d 1181, 1190 (Ind.Ct.App.2002), *trans. denied.* However, State's argument is curious, as the Employees flatly state they are only suing for prospective relief. *See* Br. of Appellant at 46 ("only prospective relief is requested"). This position is consistent with the delay of only two weeks in the Employees' decision to file suit.

 The State also claims the Employees waived their 42 U.S.C. section 1983 claims for failure to argue cogently. The State's contention is persuasive. An appellate court "will not become an advocate for a party, nor will [it] address arguments which are ... too poorly developed."

*Terpstra v. Farmers & Merch. Bank*, 483 N.E.2d 749, 754 (Ind.Ct.App.1985), *trans. denied.*

The Employees state:

Under [42 U.S.C. § 1983], persons who have been deprived of a property right created by state law under color of law and without due process are entitled to bring a claim to remedy that deprivation.

Br. of Appellant at 46. The Employees' two-paragraph argument that follows fails to provide citation support for this statement, enunciate the requirements for a successful 42 U.S.C. section 1983 action, or demonstrate they have a property right recognized under 42 U.S.C. section 1983. The Employees' failures places this court in the position of advocate in developing these arguments.[10] Accordingly, the Employees' claim under 42 U.S.C. section 1983 is waived.[11]

### B. The Indiana Constitution

 The entirety of the Employees' argument pursuant to the Indiana Constitution states,

Alternatively, the Class is entitled to prospective injunctive relief under ... the Indiana Constitution for the deprivation of property without due process. *See State v. Hayes*, 177 Ind.App. 196, 378 N.E.2d 924, 931 (Ind.Ct.App.1978) (Art. I, § 21 of the Indiana Constitution provides cause of action for deprivation of property).

Br. of Appellant at 46–47. The Employees fail to articulate what constitutes a property deprivation, among other prerequisites, pursuant to the Indiana Constitution and

---

**10.** The Employees do cite *Severson* and establish that they may sue for prospective relief. However, 42 U.S.C. section 1983 actions involve considerably more issues than what type of relief may be sought.

**11.** The Employees' only response to the State's waiver argument is to characterize it invectively as "ludicrous." Reply Br. of Appellant at 20.

leave the task of developing their argument to this court. In criminal cases—where a defendant's liberty is at stake—similar attempts to invoke the Indiana Constitution have regularly been held to constitute waiver. *See Jackson v. State*, 735 N.E.2d 1146, 1151 n. 1 (Ind.2000). Accordingly, the Employees' claim under the Indiana Constitution is waived.

### Conclusion

We affirm in part, reverse in part, and remand to the trial court for proceedings consistent with this opinion.

DARDEN, J., and FRIEDLANDER, J., concur.