

**FILED**

Nov 02 2016, 7:55 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ryan P. Sink
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Aaron T. Craft
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ron Shoemaker, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Indiana State Police Department, <br> *Appellee-Defendant.* | November 2, 2016 <br><br> Court of Appeals Case No. <br> 49A02-1604-PL-879 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Gary L. Miller, Judge <br><br> Trial Court Cause No. <br> 49D03-1408-PL-26357 |

**Altice, Judge.**

## Case Summary

[1] Ronald Shoemaker, a law enforcement officer with the Indiana State Police Department (ISP) for well over twenty years, was demoted in rank and pay in 2013 shortly after a new Superintendent of ISP was appointed. Shoemaker believes that the demotion was the result of a whistleblower report he filed with

his supervisor about four years earlier. Pursuant to Ind. Code § 4-15-10-4, the Whistleblower Law (the WBL), Shoemaker initiated an administrative appeal of his demotion. After his action was dismissed by the administrative law judge (the ALJ) for being untimely filed, Shoemaker did not pursue judicial review of the administrative decision. He filed the instant breach of contract action instead. ISP sought summary judgment on the ground that Shoemaker failed to exhaust his administrative remedies and could not bring an action for breach of contract under the WBL.[1] The trial court granted ISP's motion for summary judgment, and Shoemaker appeals.

We affirm.

## Facts & Procedural History

Shoemaker began his employment with ISP in 1989 and steadily climbed the ranks from trooper, to senior trooper, to master trooper, to sergeant (his last merit rank), to spot captain, and to spot major over the entire Criminal Investigation Division (the CID).[2] In 2008, when he was a sergeant in the Drug Enforcement Section of the CID, Shoemaker authored and submitted a written report to his direct supervisor concerning issues he had observed in the Drug Enforcement Section, including ghost employment, overtime, and possible

---

[1] ISP also argued that it was entitled to summary judgment on the merits. We need not delve into the merits of the breach of contract claim because we find the procedural issues dispositive.

[2] There are two types of rank within ISP. Merit rank is the last permanent rank that a person competitively applied for and achieved. An appointed rank, also known as spot rank, is captain or above and such ranks are appointed at the discretion of the ISP Superintendent.

misrepresentations by law enforcement officers to the court. The report was then provided to Superintendent Paul Whitesell.

[4] As a result of the report, Superintendent Whitesell promoted Shoemaker to captain of the CID in 2009 (replacing Michael Snider) and then to major of the CID in 2012 (replacing Larry Turner). Superintendent Whitesell moved Snider, Turner, and Lori Petro out of the CID at different points after the report, which Turner referred to as Shoemaker's manifesto.

[5] In January 2013, Doug Carter was appointed by Governor Mike Pence to replace Whitesell as Superintendent of ISP. On April 15, 2013, Superintendent Carter demoted Shoemaker from major to his last permanent rank of sergeant and transferred him out of the CID. This change in rank reduced Shoemaker's rate of pay. On that same day, in addition to other personnel changes, Superintendent Carter replaced Shoemaker with Snider as major of the CID, promoted Petro to captain of the CID, and brought Turner back to the CID as third in command.

[6] On January 29, 2014, more than nine months after his demotion, Shoemaker initiated an appeal pursuant to the State Employee Appeals Commission (SEAC) procedure outlined in Ind. Code § 4-15-2.2-42. Shoemaker alleged that he was demoted in retaliation for engaging in protected activity under the WBL. Acknowledging the late filing, he argued that the SEAC's thirty-day statute of limitations should be stayed based on equitable tolling and fraudulent concealment.

[7] On July 15, 2014, the ALJ entered the SEAC's final order dismissing the action. Specifically, the ALJ concluded that Shoemaker's complaint was untimely filed and that equitable tolling based on a theory of fraudulent concealment was not applicable to save his action. The order advised Shoemaker that he could seek judicial review within thirty days.

[8] Instead of exhausting the administrative appeals process by seeking judicial review of the SEAC's final order, Shoemaker chose to file the instant breach of contract action on August 7, 2014. His claim was based on ISP's alleged violation of the WBL. On January 22, 2016, ISP filed a motion for summary judgment, along with designated evidence and a memorandum in support. Following additional filings and a hearing on the motion, the trial court granted summary judgment in favor of ISP on April 8, 2016. Shoemaker now appeals.

## Discussion & Decision

[9] When reviewing a summary judgment ruling, we apply the same standard as the trial court. *David v. Kleckner*, 9 N.E.3d 147, 149 (Ind. 2014). "Summary judgment may be granted, or affirmed on appeal, only 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Ind. Trial Rule 56(C)). The facts and reasonable inferences established by the designated evidence are to be construed in favor of the non-moving party. *Id.*

[10]   The party appealing a grant of summary judgment has the burden of persuading this court that the ruling was erroneous. *See Perkins v. Stesiak*, 968 N.E.2d 319, 321 (Ind. Ct. App. 2012), *trans. denied*. The appellant also bears the burden of presenting a complete record with respect to the issues raised on appeal. *Finke v. N. Ind. Pub. Serv. Co.,* 862 N.E.2d 266, 272-73 (Ind. Ct. App. 2006) ("We cannot review a claim that a trial court erred in granting a motion for summary judgment when the appellant does not include in the record all the evidence designated to the trial court and before it when it made its decision."), *trans. denied*; *see also Lenhardt Tool & Die Co., Inc. v. Lumpe,* 703 N.E.2d 1079, 1084 (Ind. Ct. App. 1998), *trans. denied.*

[11]   Shoemaker wholly failed in his obligation to provide an adequate record on appeal. The appendix he filed includes only the CCS, the summary judgment order, and sixteen exhibits that we suppose, though we do not know for certain, constitute the evidence he designated below. Shoemaker does not include ISP's motion for summary judgment, the memoranda filed in support of and in opposition to the motion, or ISP's designated evidence. Thus, we would be well within our discretion to conclude that Shoemaker, as the appealing party, failed to present us with a record sufficient to conclude that the trial court erred in granting summary judgment to ISP. *See Finke,* 862 N.E.2d at 273. Still, we prefer to decide cases on their merits whenever possible. *Omni Ins. Group v. Poage,* 966 N.E.2d 750, 753 (Ind. Ct. App. 2012), *trans. denied*. Our review, though significantly hampered, is possible only because ISP filed the omitted portions of the record in its appendix.

[12]     We turn first to the provisions of the WBL:

> (a) Any employee may report in writing the existence of:
>
>> (1) a violation of a federal law or regulation;
>>
>> (2) a violation of a state law or rule;
>>
>> (3) a violation of an ordinance of a political subdivision (as defined in IC 36-1-2-13); or
>>
>> (4) the misuse of public resources;
>
> to a supervisor or to the inspector general.
>
> (b) For having made a report under subsection (a), the employee making the report may not:
>
>> (1) be dismissed from employment;
>>
>> (2) have salary increases or employment related benefits withheld;
>>
>> (3) be transferred or reassigned;
>>
>> (4) be denied a promotion the employee otherwise would have received; or
>>
>> (5) be demoted.
>
> (c) Notwithstanding subsections (a) and (b), an employee must make a reasonable attempt to ascertain the correctness of any information to be furnished and may be subject to disciplinary actions for knowingly furnishing false information, including suspension or dismissal, as determined by the employee's appointing authority, the appointing authority's designee, or the ethics commission. *However, any state employee disciplined under this subsection is entitled to process an appeal of the disciplinary action under the procedure as set forth in IC 4-15-2.2-42.*

(d) An employer who violates this section is subject to criminal prosecution under IC 35-44.2-1-1.

Ind. Code § 4-15-10-4 (emphasis supplied).

[13] In *Ogden v. Robertson*, 962 N.E.2d 134 (Ind. Ct. App. 2012), *trans. denied*, the appellant argued that although subsection (c) provides an administrative appeals process for violations of the WBL, use of that process was not a mandatory prerequisite to judicial review. *Id*. at 144. Our court disagreed and rejected the appellant's attempt to raise a common law claim for wrongful discharge based on the WBL. The court reasoned as follows: "If we were to hold that a claimant could seek judicial review based on a right derived from the WBL through common law and, therefore, bypass the exhaustion of administrative remedies requirement of the WBL, it would make the exhaustion requirements of the WBL illusory." *Id*. at 146. *See also Coutee v. Lafayette Neighborhood Hous. Servs., Inc.*, 792 N.E.2d 907, 911-12 (Ind. Ct. App. 2003 (observing that the General Assembly has legislated the protection for certain employees to be able to blow the whistle without retaliation and holding that the plaintiff's cause of action, if any, is under the statute, not the common law), *trans. denied*.

[14] In an attempt to avoid the exhaustion of remedies requirement, Shoemaker asserts two independent arguments. He claims that due to futility, inadequacy, and judicial estoppel, he should be excused from following the administrative procedure set out in I.C. § 4-15-10-4. Alternatively, citing *Whinery v. Roberson*, 819 N.E.2d 465 (Ind. Ct. App. 2006), *trans. dismissed*, Shoemaker contends that

the statute conferred a contractual right entitling him to bring a breach of contract action. We will address each argument in turn.

[15] An individual may be exempted from the exhaustion requirement when the administrative process would be inadequate or futile. *Ogden*, 962 N.E.2d at 144. To prevail on a claim of futility, "one must show that the administrative agency was powerless to effect a remedy or that it would have been impossible or fruitless and of no value under the circumstances." *Id.* (quoting *Smith v. State Lottery Comm'n of Ind.*, 701 N.E.2d 926, 931 (Ind. Ct. App. 1998), *trans. denied*). In other words, the exhaustion requirement will be relaxed when there is grave doubt as to the availability of the administrative remedy. *Id.* Our Supreme Court has cautioned that "the exhaustion requirement is much more than a procedural hoop and that it should not be dispensed with lightly on grounds of 'futility.'" *Town Council of New Harmony v. Parker*, 726 N.E.2d 1217, 1224 (Ind. 2000), *amended in part on reh'g*, 737 N.E.2d 719 (Ind. 2000).

[16] Shoemaker's futility argument is based on his claim that the administrative remedy set out in I.C. § 4-15-10-4(c) (an administrative appeal through the SEAC procedure outlined in I.C. § 4-15-2.2-42) was not available to him because he is an ISP employee. We observe that this position is directly contrary to the one he took before the SEAC in his administrative appeal. *See,*

*e.g., Appellee's Appendix* at 82, 85.  For the reasons set out below, we agree with his original stance regarding that applicability of the SEAC procedure.[3]

[17]　I.C. 4-15-2.2 is a lengthy chapter addressing the State Civil Service System. Within its fifty-three sections, the chapter deals with, among other things, hiring, dismissal, demotion, reassignment, and suspension of state employees, classification of positions based on the authority, duties, and responsibilities of each position, development of a pay plan, and establishment of performance standards.  I.C. § 4-15-2.2-1 defines the general applicability of the chapter and expressly excludes ISP.[4]

---

[3] Shoemaker argues that ISP should not be permitted to change its position on this issue, because it had previously argued that the SEAC was not the proper forum for Shoemaker's whistleblower claim.  ISP made alternative arguments to the SEAC:  1) the SEAC was not the proper forum and 2) regardless of the proper administrative forum, the complaint was untimely filed.  The ALJ decided the case on the timeliness ground. In light of the fact that Shoemaker has the burden of establishing error on appeal and, in this regard, asserts a position different than he did during the SEAC process, we find his judicial estoppel argument disingenuous.

[4] I.C. § 4-15-2.2-1 provides:

> (a) Except as provided in subsection (b), this chapter applies to employees of a governmental entity that exercises any of the executive powers of the state under the direction of the governor or lieutenant governor.
>
> (b) This chapter does not apply to the following:
>
>> (1) The legislative department of state government.
>>
>> (2) The judicial department of state government.
>>
>> (3) The following state elected officers and their personal staffs:
>>
>>> (A) The governor.
>>>
>>> (B) The lieutenant governor.
>>>
>>> (C) The secretary of state.
>>>
>>> (D) The treasurer of state.
>>>
>>> (E) The auditor of state.
>>>
>>> (F) The superintendent of public instruction.
>>>
>>> (G) The attorney general.

[18]     Also within the chapter is I.C. § 4-15-2.2-42, which addresses the filing of a complaint by an employee in the state civil service system concerning the application of a law, rule, or policy to the complainant. Regarding the complainant's administrative remedy, I.C. § 4-15-2.2-42 provides in part:

> (c) An employee who files a complaint under this section must initiate the complaint procedure as soon as possible after the occurrence of the act or condition complained of, and not later than thirty (30) calendar days after the date the employee became aware, or by the exercise of reasonable diligence should have been aware, of the occurrence giving rise to the complaint. An employee who does not initiate the complaint procedure within the thirty (30) day period waives the right to file that complaint.
>
> (d) A remedy granted under this section may not extend back more than thirty (30) calendar days before the complaint was initiated.
>
> (e) The following complaint procedure is established:
>
>> Step I: The complainant shall reduce the complaint to writing and present the complaint to the appointing authority or the appointing authority's designated representative. The appointing authority or designee shall conduct any

---

(4) A body corporate and politic of the state created by state statute.

(5) A political subdivision (as defined in IC 36-1-2-13).

(6) An inmate who is working in a state penal, charitable, correctional, or benevolent institution.

(7) The state police department.

(c) This subsection does not apply to a political subdivision, the ports of Indiana (established by IC 8-10-1-3), or the northern Indiana commuter transportation district (established under IC 8-5-15). The chief executive officer of a governmental entity that is exempt from this chapter under subsection (b) may elect to have this chapter apply to all or a part of the entity's employees by submitting a written notice of the election to the director.

investigation considered necessary and issue a decision, in writing, not later than fifteen (15) calendar days after the date the appointing authority receives the complaint.

Step II: If the appointing authority or the appointing authority's designated representative does not find in favor of the complainant, the complainant may submit the complaint to the director not later than fifteen (15) calendar days after the date of the appointing authority's finding. The director or the director's designee shall review the complaint and issue a decision not later than thirty (30) calendar days after the date the complaint is submitted to the director.

Step III: If the employee is not satisfied with the director's decision, the employee may submit an appeal in writing to the [SEAC] not later than fifteen (15) calendar days after the date the employee receives notice of the action taken by the director or the director's designee. The [SEAC] shall determine whether all previous steps were completed properly and in a timely manner, and, subject to subsection (f), whether the employee and subject of the complaint meet the jurisdictional requirements. If a procedural or jurisdictional requirement is not met, the [SEAC] shall dismiss the appeal. If the procedural and jurisdictional requirements have been met, the [SEAC] shall conduct proceedings in accordance with IC 4-21.5-3.

****

(h) Decisions of the [SEAC] are subject to judicial review in accordance with IC 4-21.5-3.

(i) An employee who is suspended or terminated after a hearing held by the state ethics commission is not entitled to use the procedure set forth in this section. An employee who seeks further review of a suspension or termination imposed by the state ethics commission must seek judicial review of the state ethics commission's decision in accordance with IC 4-21.5-3.

[19] This administrative remedy is not generally available to ISP employees who have employment-related complaints, due to I.C. § 4-15-2.2-1(b)(7)'s express exemption of ISP from the various statutory provisions regulating the state civil service system. When an ISP employee's complaint is based on an alleged violation of the WBL, however, the WBL brings the ISP complainant within the ambit of SEAC review for this limited purpose. Indeed, I.C. § 4-15-10-4(c) provides that "any state employee" disciplined for being a whistleblower is "entitled to process an appeal of the disciplinary action under the procedure as set forth in IC 4-15-2.2-42." We conclude that the general exclusions delineated in I.C. § 4-15-2.2-1(b) do not foreclose this limited application of the SEAC review process to all state employees bringing a claim under the WBL.[5]

[20] In this case, Shoemaker completed steps I, II, and III of the SEAC review process, but did not seek judicial review of the ALJ's decision that his complaint was untimely filed. His belated assertion that the SEAC appeal process was not applicable to him and, therefore, futile is without merit.

[21] Shoemaker next raises a novel argument that he was entitled to avoid the administrative process and file a breach of contract whistleblower claim

---

[5] There are two other comparable whistleblower statutes – Ind. Code § 22-5-3-3 and Ind. Code § 36-1-8-8, applicable to employees whose private employer is under public contract and employees of a political subdivision, respectively. The only material difference between the whistleblower statutes lies in the express remedies provided by the legislature. I.C. § 36-1-8-8(c) provides for an appeal of the disciplinary action "under the procedure set forth in any personnel policy or collective bargaining agreement adopted by the political subdivision." I.C. § 22-5-3-3(c), on the other hand, provides for an appeal of the disciplinary action "as a civil action in a court of general jurisdiction."

pursuant to I.C. § 4-15-10-4. In support, Shoemaker relies exclusively on *Whinery*, 819 N.E.2d 465.

[22]  In *Whinery*, employees of the Indiana Department of Natural Resources brought a class action against the Director of the State Personnel Department (SPD), alleging that the SPD failed to comply with a salary statute and, thus, violated their contractual rights. This court held, in relevant part, that despite being employed at-will, a state employee

> may sue for violation of employment rights in contract, and the terms and conditions of the employee's contract include "all relevant statutory provisions as if such provisions were specifically set out in the contract." *Foley v. Consol. City of Indianapolis,* 421 N.E.2d 1160, 1163 (Ind. Ct. App. 1981). A government employee's relationship with the State, although not necessarily defined by a written employment contract, is "purely contractual." Laws having to do with remuneration become part of the employment contract, and so attach themselves as an incident thereof. Thus, the Employees' state-employee status establishes a contractual relationship, and the remuneration provisions of P.L. 70 are an incident thereof.

*Whinery*, 819 N.E.2d at 473 (some citations omitted). *See also Richmond State Hosp. v. Brattain*, 935 N.E.2d 212, 235 (Ind. Ct. App. 2010) (holding that "*relevant* state constitutional provisions are part of the state employees' contractual relationship with the State" and "consider[ing] relevant those constitutional provisions having to do with remuneration") (emphasis in original), *summarily aff'd in relevant part*, 961 N.E.2d 1010 (Ind. 2012); *Marter v. City of Vincennes*, 82 N.E.2d 410, 412 (Ind. Ct. App. 1948) ("Laws having to do

with tenure and remuneration became a part of that contract…and so attached themselves to the employment as an incident thereof.").

[23] We find *Whinery* distinguishable. The statute at issue in this case – the WBL – does not address anything along the lines of remuneration or tenure. More importantly, the WBL provides an express remedy for an alleged violation of the statute through an SEAC administrative appeal. We do not agree with Shoemaker that *Whinery* provides him with the right to avoid the administrative steps and turn directly to the courts by filing a breach of contract claim based on an alleged violation of the WBL.

[24] We hold that a state employee seeking redress for an employment action allegedly taken in retaliation for whistleblowing activity must proceed with, and only with, the remedy expressly provided in the WBL.[6] Shoemaker began his administrative appeal with the SEAC but did not seek judicial review of the ALJ's determination that the administrative appeal was untimely filed. Accordingly, the trial court properly granted ISP's motion for summary judgment in this separate breach of contract action filed by Shoemaker.

[25] Judgment affirmed.

---

[6] In his reply brief, Shoemaker directs us to I.C. § 4-15-10-6 as support for his argument that the WBL does not provide an exclusive remedy. Though not persuaded, we need not address this argument because Shoemaker has raised it for the first time in his reply brief. *See I.A.E., Inc. v. Hall*, 49 N.E.3d 138, 153 (Ind. Ct. App. 2015) (appellants are not permitted to present new arguments in their reply briefs), *trans. denied*.

Bradford, J. and Pyle, J., concur.